535 So.2d 983 (1988)
Benjamin HENDERSON Plaintiff-Appellee,
v.
JACKSON IRON AND METAL COMPANY, INC. and North River Insurance Company Defendants-Appellants.
No. 19916-CA.
Court of Appeal of Louisiana, Second Circuit.
September 21, 1988.
Writ Denied December 9, 1988.
*984 Culpepper, Teat & Avery by Bobby L. Culpepper, Jonesboro, for plaintiff-appellee.
Allen & Gooch by John H. Hughes, Lafayette, for defendants-appellants.
Before MARVIN, SEXTON and NORRIS, JJ.
SEXTON, Judge.
Plaintiff brought suit for worker's compensation benefits. The trial judge granted relief finding that the plaintiff was permanently and totally disabled as a result of a work related accident. We amend to decree supplemental earnings benefits.

FACTS
On August 14, 1985, the plaintiff, Benjamin Henderson, a 62-year old employee, sustained crushing injuries to both legs and ankles when a metal beam fell off a truck that the plaintiff was unloading. At that time he was employed by General Scrap Metal Company, Inc., a subsidiary of the defendant Jackson Iron and Metal Company, Inc. After the incident, the plaintiff was rushed to Rapides General Hospital and then transferred to Shreveport, where medical treatment was administered by Dr. John Ferrell, orthopedic surgeon. After a year of supervision by Dr. Ferrell, plaintiff was released from medical care in August of 1986.
In April of 1986, before his release, General Scrap offered the plaintiff employment as a traffic director, a job which entailed the driving of an electric golf cart to direct customers and salespersons to various plant locations. He refused employment stating that he was physically unable to perform the duties. In August of the same year, General Scrap again offered the plaintiff the same job. Again the plaintiff refused, claiming an inability to perform. Worker's compensation benefits were paid until November 25, 1986 when they were terminated because he had refused the offered employment.
Plaintiff then filed suit alleging that he was permanently and totally disabled and entitled to benefits from the November 25th cancellation date to the present time due to the fact that he could not work without substantial pain. The trial court agreed and found plaintiff totally and permanently disabled.
Defendants appeal asserting that the plaintiff failed to prove by clear and convincing evidence that he is permanently and totally disabled from returning to work. Defendants secondarily argue that the plaintiff has failed to prove his entitlement to supplemental earnings benefits as he was tendered employment which they argue he is capable of performing based upon medical evidence presented at trial.
An injured employee must prove permanent, total disability by clear and convincing evidence to the exclusion of odd-lot employment, sheltered employment and working in any pain. LSA-R.S. 23:1221(2); Johnson v. Monroe Pulpwood Co., Inc., 505 So.2d 862 (La.App.2d Cir.1987).
The testimony of Dr. John Ferrell, a specialist in orthopedic surgery, revealed that he first attended to Mr. Henderson six days after the accident on August 10, 1985. Dr Ferrell placed a rod in the plaintiff's left leg and continued to see him until August of 1986, approximately one year after the accident. Plaintiff was released from the doctor's care with an orthopedic recommendation that Mr. Henderson could return to some restricted type of work. Dr. Ferrell assigned a 15% permanent physical impairment on the left side and a 20% to 25% permanent physical impairment on the right. In his opinion, the plaintiff could sit or walk for approximately three hours, lift for approximately one hour, bend or squat for one hour, twist for one hour and stand for two hours. The plaintiff could not climb or kneel. Dr. Ferrell felt that Mr. Henderson could not operate a car or truck for extended periods of time but felt that he could operate the motorized golf cart used in the offered employment and he *985 could drive a car from his house to his place of employment.
However, Dr. Ferrell, in releasing the plaintiff for limited work, did note a "nervous condition." He felt this condition should be evaluated, recognizing that the plaintiff did not personally feel that he could return to work.
Dr. Thomas Staats, a psychologist with the Work Fitness Center, apparently evaluated the plaintiff at the request of Dr. Ferrell. His psychological evaluation done on October 20, 1986 revealed that the plaintiff experiences a chronic pain disorder which he defined as a disorder wherein an individual complains of pain with no documentary reason for it or exaggerates pain that is documented. Dr. Staats noted that the plaintiff had two personality traits which were in line with the diagnosis of chronic pain disorder. The plaintiff, he felt, experienced anxiety neurosis, which is anxiety over injuries and overestimation of their significance. He also had a dysthymia disorder which is feelings of depression and hopelessness. The doctor noted that as Mr. Henderson received a mild input of physical impairment, the patient's expressed amount of pain would, in his opinion, appear to be exaggerated. He opined that plaintiff had a dependent personality disorder and prominent compulsive traits and that plaintiff is somewhat manipulative and believes that he is disabled.
Dr. Staats noted that the feelings that Mr. Henderson experienced were rarely totally disabling from an occupational standpoint. He pointed out that Mr. Henderson experienced chronic pain but at the same time failed to admit to being depressed or worrisome while believing that he is unable to work. The doctor opined that Mr. Henderson was in fact depressed and experienced anxiety but that his failure to recognize these feelings indicated that they were not so disabling so as to allow Mr. Henderson to admit to them at a conscious level.
Finally, Dr. Staats felt that the plaintiff was psychologically able to return to work but that he didn't want or believe that he was able to return on a physical basis. He concluded that Mr. Henderson "was not psychologically impaired to the point where he could not do this particular type of work should he care to." The doctor therefore noted that it would be best under the circumstances if Mr. Henderson were to become gradually work-hardened, given an antidepressant, and released to limited work duties.
Dr. Donald Wolfe, a medical doctor and also a consultant with the Work Fitness Center, evaluated Mr. Henderson on October 13, 1986. Subsequent to his examination and a review of the report of Dr. Staats, he rendered an "integrated clinical summary" on November 7. Dr. Wolfe noted that the patient viewed himself as disabled and was "bound and determined to be diagnosed as same." Dr. Wolfe noted that the psychological testing suggested that the plaintiff on occasion had played down his psychological symptoms and on occasions had exaggerated them. He noted the psychological evaluation of Dr. Staats which he summarized as indicating a passive individual possessing two of the four personality traits making an individual prone to development of chronic pain syndrome. He further noted the plaintiff's manipulative personality. Dr. Wolfe concluded that the plaintiff "could easily perform" the job offered and recommended that he "be returned to work in this capacity and should be treated with mild analgesics as needed."
Dr. Raymond Dennie, a general practitioner board eligible in orthopedics, examined Mr. Henderson at the request of Mr. Henderson's counsel. Dr. Dennie was of the opinion that the plaintiff could not work an eight-hour day and would only be available to perform certain limited types of work. Although he agreed that the plaintiff could physically perform the offered employment, he was concerned with the plaintiff's intense fixation regarding his injury. He appeared less than confident about the opinion expressed by Dr. Wolfe and suggested that a second opinion from a psychiatrist would be helpful.
The lay testimony presented included the testimony of Thomas Adams, who is employed *986 by General Scrap Material. He testified that Mr. Henderson was offered a job in April of 1986 and again in August of that same year. The job was offered at the same rate of pay and exists at this time. He testified that Mr. Henderson would basically be able to set his own hours in accord with the busy traffic hours and would not be on the job the entire eight hours.
The plaintiff testified that he must now use a cane to walk and that he has problems with swelling in both of his legs and ankles since the accident. He cannot stand for prolonged periods of time and constantly has pain. He can only stay up for a couple of hours and then he must lie down. He testified that the drive to work takes about an hour and he feels that he cannot now do this on a daily basis. He lives alone and his daughter prepares food for him. He can no longer hunt and fish as a result of the accident.
The testimony of Mrs. Henderson, the wife of the plaintiff, revealed that her husband does experience swelling in his legs and that he can no longer participate in his hobbies, mainly fishing and hunting.
The trial court's finding that Mr. Henderson is totally and permanently disabled was based upon the conclusion that the type of work offered to the plaintiff could not be adequately performed by Mr. Henderson due to severe physical limitations and due to psychological difficulty that he has experienced since the accident. Inherent in the trial court's finding was the determination that the offered employment does not now exist and required irregular climbing in and out of the golf cart.
After a review of the evidence, however, we cannot determine that the record supports these factual findings, or the conclusion that Mr. Henderson has demonstrated by clear and convincing evidence his entitlement to total and permanent disability benefits. Mr. Henderson sustained very serious physical injuries. However, the medical testimony indicates that he has healed beyond the level normally expected of a man of his age. Each medical expert agreed that the plaintiff was physically capable of performing some sort of limited employment, including the offered employment, although his ability to work for eight hours a day was seriously questioned. The only evidence to the contrary was Mr. Henderson's own assertions that he could not perform the job. Further, there is evidence that Mr. Henderson is capable of getting to and from work each day without undue hardship.
The trial court concluded that plaintiff's psychological problems strongly contributed to plaintiff's total disability. Clearly, the medical testimony reveals that Mr. Henderson suffers from psychological problems due to anxiety and stress related to his accident. However, there is very little evidence in the record which indicates that the disorder renders Mr. Henderson totally incapable of performing the offered employment.
Dr. Ferrell, the orthopedic surgeon, while noting a nervous condition, nevertheless felt that Mr. Henderson should be able to perform the job although for periods of time less than eight hours. Dr. Wolfe opined, after considering the psychological, physical and historical status of the plaintiff, that he could "easily" perform the job but should be treated with mild analgesics. Dr. Staats, the only licensed psychologist in the case, likewise noted that Mr. Henderson, although somewhat psychologically affected by the accident, was not so psychologically disabled that he could not perform the offered employment. The only physician who had difficulty with the conclusion that Mr. Henderson was psychologically able to perform was Dr. Dennie. He evaluated Mr. Henderson on an orthopedic level and, although he questioned the psychological results and thought a second opinion might be helpful, he could not state that the plaintiff could not perform the employment offered on a limited basis.
As we noted earlier, the current standard of proof for a plaintiff claiming total and permanent benefits is the difficult one of "clear and convincing evidence." We conclude that, while the evidence in the instant case does indicate that the plaintiff suffers certain psychological deficiencies which exacerbate *987 his physical problems, it falls well short of proving by clear and convincing evidence that the plaintiff is so impaired that he is unable to engage in any employment. LSA-R.S. 23:1221(2)(c).[1] See Westley v. Land & Offshore and Underwriters Adjusting Company, 523 So.2d 812 (La. 1988). See generally, Brewster v. Manville Forest Products Corporation, 469 So.2d 340 (La.App. 2d Cir.1985).
Thus, while it is necessary that the award for permanent total disability be reversed, it is clear that the plaintiff is entitled to supplemental earnings benefits in accordance with LSA-R.S. 23:1221(3)(a). The medical testimony previously reviewed clearly shows that the plaintiff suffers a significant disability and cannot earn ninety percent of the amount he was earning when injured. Thus, the plaintiff is entitled to benefits equal to seventy-four percent of the difference between what he can now earn and ninety percent of wages at injury. LSA-R.S. 23:1221(3)(a).[2]
Before proceeding further in this regard, we note that the trial court found that the employment offered by the employer (a traffic director operating from a golf cart) did not exist. Mr. Adams, the general manager of the employer, testified that the plaintiff had been offered the position of driving a golf cart and directing customers and visitors about the busy plant premises at $4.75 an hour (his previous wage) up to eight hours a day. Further, he noted letters in plaintiff's personnel file confirming the offer. He stated that the plaintiff could set his own hours. However, he pointed out that their busiest periods were from 8:00 to 10:00 in the morning and from 2:00 to 4:00 in the afternoon.
We are thus unable to find a basis in the record for the determination of the trial court that the position did not exist. We can only speculate that the trial court determination was based on the fact that this job was created specifically for this plaintiff. That fact is of no moment. An employer who offers a position to an employee who is capable of the employment but does not take that employment is entitled to credit for the offered employment. LSA-R.S. 23:1221(3)(c)(i).
We believe the medical testimony reflects that the plaintiff could have undertaken the offered employment on a part-time basisperhaps starting at an hour or so a day and gradually working up to a half day. Because plaintiff is not capable of working a full day the employer is not entitled to a credit against all supplemental earnings benefits. It thus becomes our task to determine what his level of benefits should be. His hourly wage of $4.75 an hour calculates to be a weekly wage of $190.00. LSA-R.S. 23:1221(3)(a) provides that this sum is to be multiplied by 4.3 to determine the worker's monthly salary, which is the benchmark for determining the amount of supplemental earnings benefits to which the plaintiff is entitled. In this plaintiff's case, that amount is $817.00 a monthninety percent of which is $735.30.
Working a half day (four hours a day) plaintiff's monthly wage would be $408.50 (half of $817.00). Thus, the amount he is able to earn ($408.50), subtracted from ninety percent of his monthly wage ($735.30), equals $326.80 a month. Seventy-four *988 percent of the difference between the amount he is able to earn ($408.50) and ninety percent of his wages at injury, ($735.30) is $241.83 a month (or $56.24 a week). This sum, then, is the amount to which plaintiff is entitled in supplemental earnings benefits.
Thus, the plaintiff is entitled to these benefits rather than the total and permanent benefits awarded by the trial court. He is entitled to this sum for so long as the offered position is available. If the position is terminated or altered so as to be significantly more physically onerous, then the extent of plaintiff's supplemental earnings benefits depends on whether a position similar to the offered employment is available in plaintiff's general area, with the level of benefits being determined by the formula of LSA-R.S. 23:1221(3)(a).
Finally, we conclude that it would be unfair to give the employer a credit for wages for a four hour day for the entire period of the plaintiff's disability. As we have noted, our appreciation of the medical evidence is that it consistently reflects that the plaintiff should start slowly and gradually work his way to something on the order of four hours a day. Had he begun work on November 25, 1986,[3] we estimate that he easily should have achieved the four hour a day maximum by July 1, 1988. Thus, the amount of supplemental benefits to which plaintiff is initially entitled should be something more than $241.83 a month. We will set this amount at $400.00 until July 1, 1988. Thereafter, the amount previously referenced, $241.83 a month or $56.24 a week is assessed.
It is therefore necessary that the first paragraph of the judgment of the trial court be amended to read that there be judgment in favor of the plaintiff, Benjamin Henderson, and against defendants Jackson Iron and Metal Company, Inc. d/b/a General Scrap Material Company and North River Insurance Company, in solido, for worker's compensation benefits representing supplemental earnings benefits at the rate of $400.00 per month from November 25, 1986 until July 1, 1988 and thereafter at $241.83 a month ($56.24 a week) with interest on all sums at the rate of 12% per annum on each past due payment until paid. This level of supplemental earnings benefits pertains for as long as the proffered employment is available or unless, after being accepted by the plaintiff, it is altered so as to be significantly more physically onerous. In case of the foregoing if the parties are unable to mutally agree upon the correct level of supplemental earnings benefits then the right of any party to a judicial redetermination (in the trial court) of the level of supplemental earnings benefits is specifically reserved.
The remainder of the judgment is affirmed. All costs are assessed to appellant.
AMENDED AND AFFIRMED.
NOTES
[1] For the purposes of this analysis, we assume arguendo that a person whose mental disability precludes physically being able to engage in any employment fits the definition of LSA-R.S. 23:1221(2)(c). Thus, we do not resolve, because we do not need to, the suggestion of Professor Johnson that the use of the word "physically" in the section just cited may, by definition, preclude total disability to one who contends his psychological problems preclude his physical performance. 13 W. Malone and A. Johnson, Louisiana Civil Law Treatise, § 281, at 141 pp. 141-142 (Supp.1988).
[2] As the date of injury herein was August 14, 1985, we compute under the formula in effect at that time. Act No. 926 of 1985 which changed the formula did not become effective until January 1, 1986. The rate of compensation benefits are determined by the date of the injury. LSA-R.S. 23:1202; Harris v. La. Paving Company, Inc., 427 So.2d 1352 (La.App. 2d Cir.1983); Young v. Western Electric Co., Inc., 486 So.2d 962 (La.App. 1st Cir.1986).
[3] The plaintiff should receive supplemental earnings benefits as of November 25, 1986, the same day the trial court began total disability benefits.