572 So.2d 685 (1990)
Benita FRANKLIN
v.
PIZZA HUT, INC.
No. 90-CA-0901.
Court of Appeal of Louisiana, Fourth Circuit.
December 20, 1990.
James W. Hailey, Jr., Hailey, McNamara, Hall, Larmann & Papale, Metairie, for defendant/appellant.
Darleen M. Jacobs, New Orleans, for plaintiff/appellee.
Before KLEES, CIACCIO and LOBRANO, JJ.
LOBRANO, Judge.
Plaintiff-Appellee Benita Franklin (Franklin) was involved in an automobile accident on November 1, 1986, during the *686 course and scope of her employment as a delivery driver for Defendant-Appellant Pizza Hut, Inc. (Pizza Hut). She sustained injuries to her lower back and ankle and received workers' compensation from that date until May 30, 1987. On August 13, 1987, Franklin sued for total and permanent workers' compensation and medical expenses. On April 19, 1989, surgery was performed on Franklin's lower back.
The matter was tried before the Civil District Court for the Parish of Orleans on December 19, 1989. Judgment was rendered in Franklin's favor. The trial judge decreed that she was totally and permanently disabled, entitling her to weekly workers' compensation benefits in accordance with La.R.S. 23:1221(2)(a). In addition, the trial judge awarded Franklin medical expenses in the amount of $17,662.28 for the April 19th surgery. Pizza Hut has appealed, alleging the following assignments of error:
1) the trial judge erred in finding a relationship between the surgical procedure performed on April 19, 1989, and the accident in question;
2) the trial judge erred in not considering rehabilitation possibilities as required by La.R.S. 23:1226(D) before a judgment of total and permanent disability was rendered; and
3) the trial judge erred in assigning total and permanent disability to the plaintiff.

FACTS:
On November 1, 1986, Franklin was driving a Pizza Hut delivery truck earning $3.35 per hour when she was involved in an accident and sustained injuries to her ankle and lower back. She was taken to Methodist Hospital, where she was hospitalized from the date of the accident through November 22, 1986. She was initially treated by Dr. Essam Elmorshidy, who performed a CT scan and a myelogram on her lower back.
Following her release from the hospital, Dr. Daniel Seltzer became her treating physician. She was treated by Dr. Seltzer from December 22, 1986 through July 16, 1987. He diagnosed her injury, based on the previously performed tests, as a lumbar disc herniation at the L4-5 level. As of February 4, 1987, Dr. Seltzer released Franklin to return to work with restrictions. As of May 27, 1987, he released her to return to her regular job, if she could handle it.
Franklin next saw Dr. George Andrews, an orthopaedic surgeon, who treated her from December 10, 1987 through July 1, 1988. In June of 1988, Dr. Andrews ordered a CT scan and MRI of the lumbar spine to be performed. According to Dr. Andrews, the MRI was normal, while the CT scan showed a bulging disc at level L4-5. Dr. Andrews testified at trial that he considered Franklin disabled throughout the course of his treatment of her.
On December 22, 1988, Franklin first saw Dr. Kenneth Vogel, a neurosurgeon. Based on a second examination of Franklin, Dr. Vogel felt Franklin was disabled, and suggested she be admitted to the hospital for a thorough examination. Franklin was admitted to Mercy Hospital on April 16, 1989 where a lumbar discogram and CT scan were conducted. According to Dr. Vogel, the tests revealed the L4 disc to be normal, and the L4-5 disc to be slightly abnormal. Dr. Vogel then performed a microsurgical laminectomy of the lumbar spine, and discovered a disc fragment and herniation at level L5-S1. The nerve root was retracted medically, and the disc fragment and herniation were removed from the body of L5. As of July 18, 1989, Dr. Vogel felt that Franklin needed to rest for rehabilitation, and avoid lifting over 35 lbs. on a permanent basis. Dr. Vogel testified that Franklin has a 10 to 15% partial whole body permanent disability.
Franklin was also examined by Dr. Melvin Parnell at the request of Pizza Hut, once on April 8, 1987, and again on February 27, 1988. Dr. Parnell testified that based on his examinations and readings of the test reports, the herniation and disc fragment discovered by Dr. Vogel at L5-S1 were unrelated to the accident in question.
At trial, Franklin testified that she experienced extreme pain in her lower back and legs from the time of the accident until her *687 surgery. Since surgery, she has experienced some relief, but is still in pain. She testified that her workers' compensation benefits were terminated as of May 30, 1987,[1] and she has not received any payments since. She is a graduate of Southern University with a degree in Computer Science. She did not work between the date of the accident and February, 1989, at which time she obtained a job teaching children for one hour per day, earning $3.00 per hour. The teaching program is Federally funded and will terminate at the end of the year. Franklin has no other jobs lined up, but has applied for another job similar to the one she has now. In order to teach full time, she would have to go back to school and get a teaching degree. She stated at trial that she would be willing to do jobs that do not involve lifting.
Franklin's husband, Kelvin Franklin, testified that since Franklin's surgery, he does all the lifting chores around the house. Franklin has done no lifting, bending or pushing, but has done sweeping.

ASSIGNMENT OF ERROR NO. 1:
In its first assignment of error, Pizza Hut contends that the trial judge erred in finding a relationship between the surgical procedure to remove the disc fragment at the L5-S1 level and the accident in question. Relying on its direct examination of Dr. Parnell, and its cross examination of Drs. Seltzer and Andrews, Pizza Hut argues that because tests prior to the surgery showed injury at L4-5 as opposed to L5-S1, that the L5-S1 injury and the accident were not causally related. In addition, Pizza Hut points to the two year plus gap between the date of the accident and the date of the surgery, arguing that non-trauma disc injury could have occurred during that time.
When questioned at trial about why previous tests showed Franklin's injury to be at L4-5 rather than L5-S1, Dr. Seltzer, Franklin's treating physician, stated that no test is infallible, and that surgery is the test of choice to determine whether a disc is herniated. He further stated that sometimes one test will show damage while another will not. Both he and Dr. Vogel stated that Franklin's pain was compatible with a disc injury at any level, L-3, L4-5, and L5-S1. Dr. Vogel stated that based on the history given to him by Franklin, her condition was related to the accident in question.
Both Dr. Seltzer and Dr. Vogel examined Franklin over a significant period of time. In making his decision, the trial judge accepted the testimony of these physicians, as opposed to the testimony of Dr. Parnell, who only examined Franklin twice. Louisiana law is clear that the testimony of the treating physician who had the benefit of repeated examination and sustained observation of a patient under his direct care and treatment is to be accorded greater weight and probative value than that of a physician who had not undertaken to treat the patient, but examined her a few times. Lewis v. Alloy Casting of Louisiana, Inc., 465 So.2d 847, 850 (La.App. 2d Cir.1985).
"Where there is proof of an accident and of the following disability without any intervening cause it is presumed that the accident caused the disability." Guillory v. U.S. Fidelity and Guaranty Ins. Co., 420 So.2d 119 (La.1982) at 123. The effect of this presumption is to shift the burden of proof to the defendant. Id. Causation is not necessarily a medical conclusion. Its ultimate determination is to be made by the courts based on all the credible evidence. Haughton v. Fireman's Fund American Ins. Companies, 355 So.2d 927 (La.1978). See, Dickerson v. Zurich-American Ins. Co., 479 So.2d 571 (La.App. 1st Cir.1985). Furthermore, our well established principles of appellate review dictate that before we can disturb the trial court's findings of fact, we must determine that it is manifestly erroneous.
Considering the medical evidence, the entire record, and the legal principles set forth above, we cannot say that the trial court erred in concluding Franklin's disc injury at the L5-S1 level was caused *688 by the accident of November 1, 1986. The award of $17,662.28 for medical expenses incurred by Franklin is affirmed.

ASSIGNMENT OF ERROR NO. 2:
In its second assignment of error, Pizza Hut complains that the trial judge erred in not considering rehabilitation possibilities before rendering a judgment of total and permanent disability as required by La.R.S. 23:1226(D).[2] Because we determine that the award of the total and permanent benefits was improper in this case, it is unnecessary that we address this issue.

ASSIGNMENT OF ERROR NO. 3:
In its third assignment of error, Pizza Hut argues that the trial court erred in finding Franklin to be totally and permanently disabled. La.R.S. 23:1221 states, in part:
"Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
(2) Permanent total
(a) For any injury producing total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason or education, training, and experience, sixty-six and two-thirds percent of wages during the period of such disability."
"[T]he current standard of proof for a plaintiff claiming total and permanent benefits is the difficult one of `clear and convincing evidence.'". Henderson v. Jackson Iron and Metal Co., 535 So.2d 983, 986 (La.App. 2d Cir.1988), writ denied 536 So.2d 1202 (La.1988). In Henderson, the Second Circuit held that the plaintiff failed to establish by clear and convincing evidence that he was permanently and totally disabled. There, the plaintiff suffered crushing injuries to both legs and ankles. Although these were serious injuries, the medical testimony indicated that he healed beyond the level normally expected of a man his age, and each medical expert agreed that he was physically capable of performing some sort of limited employment. The only evidence to the contrary was his own assertion that he could not perform the job.
In the instant case, Franklin was injured on November 1, 1986. While she did not return to her job at Pizza Hut, she was released to return to work as of May 30, 1987 by her treating physician, Dr. Seltzer. In February of 1989, Franklin began working at her current job, a one hour per day teaching position. By her own admission, she sought employment during the interim period, and is currently willing to continue working at a job similar to the one she has now. Although Dr. Vogel testified that Franklin suffers a 10 to 15% partial whole body permanent disability, all the testimony indicates that Franklin is able to work at certain jobs which do not involve strenuous physical exertion. Accordingly, as was the case in Henderson, we find that Franklin failed to prove total and permanent disability by clear and convincing evidence. See also, Keith v. Office of Risk Management, 516 So.2d 440 (La.App. 1st Cir.1988).
However, while it is necessary that the award for permanent total disability be reversed, it is clear that Franklin is entitled to supplemental earnings benefits in accordance with La.R.S. 23:1221(3)(a). That statute provides that an employee who is unable to earn wages equal to 90% of what he or she was earning at the time of injury is entitled to 662/3% of the difference between the average monthly wage at the time of injury and the average monthly wage the employee is earning or is able to earn in any month thereafter.
*689 From the date of injury until May 30, 1987 Franklin received temporary total disability benefits of 662/3% of $100.00, her average weekly wage at Pizza Hut. As of May 30, 1987 Dr. Seltzer released her to return to work. Although she did not actually begin working until February, 1989, the evidence is clear she was able to perform limited, non-physical employment during that period. Dr. Seltzer's recommendations and Franklin's own job application support this conclusion.
Since Franklin would have had to return to school in order to obtain a higher paying teaching position, and since there is no evidence she was offered any other employment, for purposes of calculating SEB benefits we conclude that from June 1, 1987 she was only able to earn the amount she is currently earning. Franklin currently earns $3.00 per hour, one hour a day, five days a week. Her average monthly wage is 4.3 × $15.00 or $64.50. La.R.S. 23:1221(3)(a). At the time of injury her average monthly wage was $430.00. Accordingly she is entitled to 66 2/3 of $365.50 or $243.68 per month from June 1, 1987 until such time as determined under the provision of La.R.S. 23:1221(3).
AFFIRMED IN PART; REVERSED AND RENDERED IN PART.
NOTES
[1] This is consistent with Dr. Seltzer's May 27, 1987 release of her return to work.
[2] La.R.S. 23:1226(D) provides:

"(D) Prior to the hearing officer adjudicating an injured employee to be permanently and totally disabled, the hearing officer shall determine whether there is reasonable probability that, with appropriate training or education, the injured employee may be rehabilitated to the extent that such employee can achieve suitable gainful employment and whether it is in the best interest of such individual to undertake such training or education."