631 So.2d 512 (1994)
Lawrence BROCK
v.
MORTON GOLDBERG AUCTION GALLERIES, INC.
No. 93-CA-1078.
Court of Appeal of Louisiana, Fourth Circuit.
January 13, 1994.
*513 Timothy K. Lamy, Barker, Boudreaux, Lamy & Foley, New Orleans, for plaintiff/appellant.
Fred T. Hinrichs, Christovich & Kearney, New Orleans, for defendant/appellee.
Before BARRY, ARMSTRONG and JONES, JJ.
JONES, Judge.
Plaintiff, Lawrence Brock, appeals a judgment dismissing his claim for benefits under the Worker's Compensation Act. On appeal plaintiff argues that the hearing officer erred in finding that he was not disabled and was not entitled to have his employer's insurer pay for lumbar surgery.

FACTS
On September 9, 1989 the plaintiff was involved in an automobile accident while working for Morton Goldberg Auction Galleries, Inc. At the time of the accident the employee was in Pompano Beach, Florida assisting in the transportation of antique furniture. While riding in the company vehicle, (a van) the plaintiff was struck in the back by a large antique statue which slid through the van when the van was struck by another vehicle. Plaintiff's attorney initially sent him to Dr. Luis Bogran, a medical doctor on September 14, 1989, who diagnosed a cervical and lumbar strain, prescribed medication, and assigned plaintiff full disability status for a two week period. Subsequently his attorney referred him to Dr. Bernard Manale, an orthopaedic surgeon, who became his treating physician. Dr. Manale treated the plaintiff from September 20, 1989 up to the date of trial. Earlier litigation which was instituted against the employer resulted in a settlement and plaintiff was paid compensation benefits by the defendant up until February 10, 1992 when he was notified that his weekly benefits would be terminated.
Approximately three months before his employer terminated paying weekly benefits, the claimant filed a disputed claim for compensation benefits alleging that his treating physician, Dr. Manale had recommended lumbar surgery; but the employer had refused to authorize treatment. A hearing on claimant's disputed claim was held on December 18, 1992 and a judgment was later rendered dismissing his claims.

DISCUSSION AND LAW
In his first assignment of error appellant argues that the hearing officer committed reversible error by admitting into evidence *514 the hearsay medical report of Dr. Montz.
Plaintiff argues that Dr. Montz's report was inadmissible hearsay and should not have been admitted over his objection. Plaintiff acknowledges that pursuant to the provisions of La.R.S. 23:1122 a medical report of the employer's physician is admissible if a copy is served upon the employee within six days after the receipt of the report. However plaintiff argues that the report was not mailed to the plaintiff timely, thus was not admissible. Richard v. Guillot, 271 So.2d 719, 722 (La.App. 1st Cir.1972).
Plaintiff's reliance upon La.R.S. 23:1122 is misplaced because the provisions of that section only apply in cases involving medical examinations by a physician chosen by the employer. The medical report admitted into evidence at the hearing on plaintiff's claims was that of Dr. Montz, a physician appointed by the Office of Worker's Compensation to perform an independent medical examination of the plaintiff pursuant to the provisions of La.R.S. 23:1123.
In light of the express language of La.R.S. 23:1123, the report was admissible. La.R.S. 23:1123 provides as follows:
If any dispute arises as to the condition of the employee, the director, upon application of any party, shall order an examination of the employee to be made by a medical practitioner selected and appointed by the director or, upon the director's refusal, by the court.... The medical examiner shall report his conclusions from the examination to the director and to the parties and such report shall be prima facie evidence of the facts therein stated in any subsequent proceedings under this Chapter. (emphasis added)
Pursuant to this section, the report of the independent medical examiner appears to be akin to a recommendation to the hearing officer. As such, it automatically becomes a part of the record.
Additionally plaintiff's reliance upon Clark v. Atlantic Painting Company, 521 So.2d 505,511 (La.App., 4th Cir.1988) to support his assertion that Dr. Montz's report was inadmissible is misplaced. In that case this court stated that written reports of physicians are inadmissible hearsay; however that case did not involve a report of a physician appointed by the Office of Worker's Compensation to conduct an independent medical examination. Pursuant to the provisions of La.R.S. 23:1123 the reports of physicians appointed by the Office of Worker's Compensation represent exceptions to the admission of hearsay medical reports. Plaintiff's argument that the admission of this report deprived him of his constitutional rights to cross examine Dr. Montz has no merit. Plaintiff had the right to subpoena Dr. Montz to testify, yet failed to do so. For these reasons, we find that the hearing officer did not err in admitting Dr. Montz's report.
In his second assignment of error the appellant argues that the hearing officer committed reversible error by holding him to an improper, more stringent burden of proof. We agree.
The plaintiff's accident occurred in 1989. The 1989 amendment setting forth the clear and convincing standard of proof did not become effective until January 1, 1990. Yet in ruling on the plaintiff's claim in 1993, the court incorrectly stated that "the plaintiff has to prove by clear and convincing evidence that he is disabled as a result of substantial pain from returning to work." The governing law in a compensation action is that which was in effect at the time of the alleged injury. Bruno v. Harbert Intern. Inc., 593 So.2d 357, 360 (La.1992). Since the new statute was not in effect when the plaintiff was injured, it was error for the hearing officer to require the plaintiff to meet this new, more restrictive burden of proof.
Plaintiff's evidence should have been evaluated by the "preponderance of the evidence" standard. Pursuant to that standard, the evidence taken as a whole must show that the fact sought to be proved is more probable than not. Walton v. Normandy Village Homes Association, Inc., 475 So.2d 320 (La. 1985); Lubom v. L.J. Earnest, Inc., 579 So.2d 1174 (La.App. 2nd Cir.1991).
In reaching the conclusion that the plaintiff had not proven by "clear and convincing evidence" that he was disabled from returning *515 to work, the hearing officer acknowledged that Dr. Manale, the plaintiff's treating physician stated that the plaintiff was disabled. However, the hearing officer apparently concluded that the following evidence was significant enough to override the testimony of Dr. Manale: Dr. Williams, an orthopedic surgeon who saw the plaintiff on three occasions found no objective evidence of pain and saw no reason why the plaintiff could not work. Dr. Levy, a neurosurgeon who saw the plaintiff on one occasion found no neurological reason that would prevent the plaintiff from returning to work; and Dr. Montz, the physician chosen by the Office of Worker's Compensation to perform an independent medical examination opined in his report that the plaintiff was malingering. The medical evidence, according to the hearing officer, did not show any pathology "other than a degenerative condition of the spine that usually results from arthritis."
Since the hearing officer believed there was a conflict in the medical evidence, he concluded that he must resort to lay testimony to decide the case. Having resorted to lay testimony, the hearing officer opined that he did not find the appellant to be a credible witness. For these reasons, he ruled in favor of the defendant.
In reviewing the record we note that at the hearing, the plaintiff called three witnesses to testify: Dr. Manale, the treating physician; Mr. Edmunson, the adjuster for Highland (the insurer); and the plaintiff. The defendant called no witnesses but submitted the depositions and medical reports of Drs. Williams and Levy, the previously taken depositions of the plaintiff and the report of Dr. Montz. The plaintiff and Dr. Manale, his treating physician testified that the plaintiff was disabled. Dr. Manale, a board certified orthopedic surgeon testified that he had been treating the plaintiff since September 20, 1989 and was still treating him on December 18, 1992, the date of the hearing. The plaintiff saw Dr. Manale on a monthly basis and Dr. Manale testified that the plaintiff was "totally disabled from returning to work" and that he had never released him to return to work. Dr. Manale's diagnosis was that the plaintiff had symptomatic degenerative lumbar disc disease at L4-L5. Dr. Manale further testified that the plaintiff either had a normal disc prior to his accident on the job and the accident caused the problems he was now experiencing with his back or the plaintiff already had a degenerating disc and the accident triggered or caused the symptoms, since the disc was already weakened. Dr. Manale testified that a discogram taken in May, 1991 showed that plaintiff had a bulging disc that had leaked and was causing him pain.
While it is true that Dr. Manale opined that plaintiff's condition should improve with time, he could not state when the condition might improve. Nor did he state that the plaintiff would definitely get rid of all his pain. Further, although he expressed a preference for the plaintiff to wait to see if the condition would improve, he indicated that surgery was an option for the plaintiff to pursue.
The hearing officer gave credence to that part of the medical reports and depositions of Drs. William, Levy, and Montz wherein these doctors found no medical reason to indicate the plaintiff was disabled from working. Yet, he apparently ignored other portions of their depositions and reports. In Dr. Williams' deposition of 8/11/92 Dr. Williams admitted that an MRI of the plaintiff's lumbar spine taken at the Imaging Center revealed evidence of decreased signal intensity from the L4-L5 disc which he opined was an indication of early degenerative changes. He also admitted that at the times that he examined the plaintiff he was not aware that a discogram had been performed on 5/13/91. Although he admitted that he had not reviewed the discogram test, he opined that the fissures or lesions shown on the discogram would not typically be caused by trauma, but more likely to have occurred with degenerative disease. He admitted that degenerative changes could cause pain. In his deposition, Dr. Levy testified that at the time he saw the plaintiff, he did not know the results of the discogram. He later became aware that the discogram disclosed fissures. He opined that the majority of fissures are asymptomatic but conceded that as a result of injury, the fissures could become symptomatic. Dr. *516 Levy testified that he could not give an opinion on whether the plaintiff's accident caused the lesion or fissure. Absent comparative imaging slides (one taken before the accident and one taken subsequent to the accident), it was impossible to tell. Dr. Levy did not review any of the original films or MRI test. His opinion was based solely on the one exam and reviewing written reports. He opined that based on the nature of plaintiff's problem, he would defer to an orthopedist.
Dr. Montz only saw the plaintiff one time, on October 9, 1992. He took a history and conducted a physical exam. His opinion, which formed the basis for the hearing officer's opinion was made by reviewing records consisting of an x-ray taken in 1989, a CAT scan taken in March, 1990, a tonogram taken in March, 1991, the MRI dated March 6, 1992, Dr. William's reports and Dr. Levy's deposition of August 7, 1991. Notably absent from the records and reports reviewed by Dr. Montz was the discogram taken in May 1992. Since this discogram was the test primarily relied upon by Dr. Manale to support his finding that the plaintiff was suffering pain because of the bulging disc at the L4-5 level, it is not surprising that Dr. Montz stated that, "There have been no significant tests or physical findings to substantiate his persistent discomfort." Nor is it surprising that he concluded, "I don't see any objective findings to substantiate a long term permanent impairment nor can I find a reason for his not returning to work. I agree with the findings of Dr. Levy and Dr. Williams."
Notwithstanding the fact that Dr. Montz obviously had not reviewed all available medical tests; the hearing officer stated that he had to give serious weight to the report of Dr. Montz because his report "constituted prima facie proof that the plaintiff is not disabled from returning to work."
The weight afforded an expert's testimony is dependent upon his qualifications and the facts on which his opinion is based. Payne v. Country Pride Foods, Ltd., 525 So.2d 106, 110 (La.App. 3 Cir.1988). While it is true that pursuant to the provisions of La.R.S. 23:1123 Dr. Montz's report would ordinarily constitute prima facie evidence of the facts reported therein, serious weight cannot be afforded to a medical report based on incomplete medical facts. Because Dr. Montz did not review all tests relevant to the plaintiff's condition, the trial court erred in finding that this report was entitled to serious weight.
Moreover, the hearing officer erred in according more weight to Dr. Montz report than to the reports and testimony of Dr. Manale, the plaintiff's treating physician who had been treating him on a monthly basis. Generally speaking the testimony of treating physician is entitled to greater weight than that of a physician who sees the claimant for litigation purposes only. Dumas v. Hartford Ins., Co. 583 So.2d 31, 34 (La.App. 4th Cir. 1991); Franklin v. Pizza Hut, Inc., 572 So.2d 685, 687 (La.App. 4th Cir.1990).
Additionally, the hearing officer was also apparently of the opinion that if the medical records only showed degenerative changes, the plaintiff could not prevail. However, a preexisting disease or infirmity does not disqualify the employee if the work injury aggravated, accelerated, or combined with the disease or infirmity to produce disability, Walton, supra at 324. If, as the plaintiff testified, it is true that he was not experiencing any back pain prior to the work related accident, plaintiff can prevail.
In his final assignment of error, plaintiff argues that the hearing officer committed reversible error by failing to award attorney's fees and penalties despite defendant's arbitrary and capricious conduct. We disagree.
An assessment of penalties and attorney's fees is proper unless the employee's rights to benefits are reasonably controverted. The claimant's rights to benefits are reasonably controverted when the insurer has sufficient factual and medical evidence to counter the information presented by the claimant. Clark v. Atlantic Painting Co., supra, at 510. At the time that the defendant decided to stop paying benefits, reports had been obtained from at least two separate physicians which stated that no reason existed for the appellant not to work. For this *517 reason, we conclude that the defendant's actions cannot be said to be arbitrary and capricious.
Absent the fact that the hearing officer utilized an erroneous standard of proof, accorded undue weight to the report of Dr. Montz, and erroneously concluded that proof of a degenerative disease automatically disqualified the plaintiff from prevailing, it is quite possible that the plaintiff could have prevailed. Recognizing that resolution of some of these issues involves questions of credibility, we conclude that the case must be remanded for a new hearing to determine if the plaintiff is entitled to receive benefits under the Worker's Compensation Act.
Accordingly, the judgment is reversed and the case is remanded for a new hearing to determine if plaintiff is entitled to additional benefits.
REVERSED AND REMANDED.