I2GOTHARD, Judge.
In this worker’s compensation proceeding, claimant, Gary Boudreaux, appeals a judgment rendered in his favor and against defendant, Production Management, Inc. For the following reasons, we affirm.
FACTS/PROCEDURAL HISTORY
On March 5, 1991, claimant was hired by defendant as a rigger, earning $7.00 an hour. Subsequently, on September 5, 1991, claimant was assigned to work as a helper to a pipe fitter. Claimant’s duties consisted of standing on a motorized man-lift and removing old paint from a large metal structure with a tool similar to a welding torch. At some point, the lift claimant was standing on unexpectedly moved, causing him to strike his hip on the railing as well as to jam his head under a support beam. Claimant did not initially believe himself to be injured and thus did not say anything to his employer. However, as the day wore on, claimant suffered |3increasing amounts of pain. Thus, at the end of his shift he informed his supervisor of the accident. The supervisor told claimant to take off the next two days and return to work on Monday, September 9, 1991.
By the afternoon of September 8, the day before he was to return to work, claimant’s pain had become so intense that he sought treatment at the emergency room of West Jefferson Medical Center. The emergency room records indicate that claimant was examined by a physician, prescribed medication and instructed to see his personal physician the next day. The next morning, claimant reported to work and was sent by his employer to see Dr. John McAlvanah.
Dr. McAlvanah initially examined claimant on September 10, 1991. Claimant’s symptoms consisted of pain in his lower back. The doctor diagnosed claimant as having a lumbar strain and contusion of the hip and recommended that he not return to work immediately. On September 13, 1991, Dr. McAlvanah again saw claimant. On this occasion, the doctor noted an overall increase in claimant’s symptoms, most notably muscle spasm in his back. Dr. McAlvanah then referred claimant to Dr. Raymond Horn, an orthopaedic surgeon.
Dr. Horn examined claimant on September 13, 20, 27, and October 4, 1991. During these examinations, claimant complained of *787 pain in his lower right back and numbness in his right calf. Dr. Horn ordered an MRI for claimant, which was performed on October 3, 1991 by Dr. Harold Neitzschman. The MRI revealed a central bulge at the L5-S1 disc and an annular bulge at the L4-5 disc. However, the MRI indicated no disc herniation or nerve impingement. Dr. Neitzschman interpreted the MRI as showing clear evidence of degenerative changes which, in his opinion, preceded claimant’s work place accident. Likewise, Dr. Horn concluded that the MRI results were consistent with degenerative changes. In Uaddition, Dr. Horn believed that claimant possibly had a ruptured disc so he referred him to Dr. Carlos Gorbitz, a neurosurgeon.
Dr. Gorbitz initially examined claimant on October 21, 1991. At this time the doctor reviewed the MRI report, which he believed showed signs of degenerative disc disease. Dr. Gorbitz also noted some evidence of focal herniation at the L5-S1 and L4-5 discs. He related this herniation to claimant’s work-related accident of September 5, 1991. Dr. Gorbitz again saw claimant on November 25 and December 23, 1991. On the latter date, the doctor found claimant to be essentially back to normal. Thus, Dr. Gorbitz released claimant to return to light duty work, with restrictions on lifting objects over thirty pounds.
Thereafter, claimant returned to work and was placed in the shipping department. Claimant worked for three weeks without incident and then was transferred to the spool shop. In the spool shop, according to claimant, he was forced to lift objects over thirty pounds. Claimant alleges that his pain began to intensify due to the lifting and, as a result, he eventually missed three days of work. Claimant did not inform defendant that he was going to be absent from work, as required by company policy. When he returned to his job, claimant was fired. The reason for claimant’s firing was his failure to inform defendant that he was going to miss work.
Claimant continued to suffer back pain, leading him to return to see Dr. Gorbitz. On February 21, 1992, Dr. Gorbitz examined claimant and discovered no objective neurological findings. The doctor recommended conservative treatment and told claimant that surgery was not necessary.
Claimant then sought a second opinion from Dr. Kenneth Vogel, a neurosurgeon. Dr. Vogel, who examined claimant on June 18,1992, diagnosed him ftas having a chronic lumbosacral strain with a possible lumbar facet or disc syndrome. Dr. Vogel recommended claimant undergo surgery.
Claimant is functionally illiterate and has been employed as a manual laborer throughout his life. Since being fired by defendant, claimant has not worked. By July of 1992, claimant’s financial situation had deteriorated to the point where he was evicted from his residence and had his car repossessed. These events placed a great deal of stress.on claimant, leading him to be admitted to the psychiatric ward of Charity Hospital on July 14, 1992. Claimant was discharged from Charity on July 31, 1992. He has since been treated on a monthly basis by Dr. David Mitchell at the West Jefferson Mental Health Clinic. Dr. Mitchell has prescribed for claimant 300 mg. of lithium, to be taken twice a day.
Claimant had previously been hospitalized for psychiatric problems in 1985, following a work place accident. Claimant, who was employed by Avondale Shipyards at the time, breathed paint fumes while working in a tank and subsequently suffered hallucinations. Consequently, he was hospitalized for eleven days in the psychiatric ward of the West Jefferson Hospital. Upon his release, claimant returned to his job at Avondale. From 1985 to 1992, claimant suffered no further mental problems.
Following his stay at Charity in July of 1992, claimant was examined by various mental health professionals. Qn April 8, 1993, claimant was examined by Dr. Cornelius Gor-man and Dr. Leighton Stamps. In a report dated April 13, 1993, Drs. Gorman and Stamps stated that claimant was psychologically disabled from working and in need of individual therapy, as well as psychotropic medication. They further recommended that Dr. Roger Anastasio perform a psychiatric evaluation of claimant.
*788 Iflln his deposition testimony, Dr. Stamps stated that claimant has a bipolar disorder. In addition, he diagnosed claimant as suffering from chronic depression. However, in contrast to the opinion stated in the April 13, 1993 report he authored with Dr. Gorman, Dr. Stamps stated that claimant was not psychologically disabled. Rather, according to Dr. Stamps, claimant was unable to work due to a combination of the depression and his pain.
Dr. Anastasio, a psychiatrist, examined claimant on April 14, 1993. Dr. Anastasio diagnosed claimant as having bipolar affective disorder, which he termed a “very significant psychiatric illness”. He stated that claimant’s psychiatric illness was a pre-exist-ing condition which had probably been in remission at the time of his work place injury. Further, Dr. Anastasio stated that the psychiatric illness had not been caused by claimant’s back injury; rather, the doctor believed his treatment with an anti-depressant medication precipitated the psychotic episode requiring hospitalization at Charity. According to Dr. Anastasio, claimant would require “psychiatric intervention indefinitely into the future”. However, the doctor stated that with proper treatment the condition could be kept under control. Dr. Anastasio believed claimant’s treatment, which consisted of seeing Dr. Mitchell monthly and taking 300 m.g. of lithium twice a day, to be appropriate for his condition. Thus, Dr. Anastasio concluded that claimant was not psychologically disabled from working.
On May 13 and 14, 1993, Jane Strieker performed a functional capacity evaluation (“FCE”) on claimant. Ms. Strieker, who was accepted by the trial court as an expert in the field of occupational therapy, stated that she believed that claimant did not give a maximum effort during the evaluation. For example, she stated that claimant’s verbal reports of pain were considerably higher than any ^objective signs of pain, such as limping, demonstrated by him during the FCE. In addition, Ms. Strieker noted that claimant’s results on the lifting and carrying tests, which were repeated over time, were inconsistent. As a result of claimant’s lack of effort, Ms. Strieker stated that the FCE did not reveal claimant’s true maximum capabilities, although it did establish his minimum level.
Following the FCE, Tanya Williams of the American Rehabilitation Consultant Services issued a report regarding the availability of employment to claimant. Ms. Williams’ report, dated May 10, 1993 and supplemented on May 18,1993, concluded that claimant was capable of earning $4.25 to $7.00 an hour in the light to medium category of employment. The report further noted that such employment was available to claimant.
On April 24,1992, claimant filed a disputed claim for compensation with the Office of Worker’s Compensation. Trial on the merits was held on May 19, 1993. The matter was taken under advisement and, on April 22, 1994, judgment was rendered in favor of claimant. The judgment decreed that claimant had been injured as the result of a work place accident on September 5,1991. Defendant was ordered to pay claimant compensation benefits in the amount of $200 a week from the date of the accident through December 21, 1991, a total of $2,800. Defendant was also ordered to pay supplemental earnings benefits to claimant in the amount of $26.67 a week from April through September of 1992, a total of $826.27. Defendant was further ordered to pay all of claimant’s medical bills and expenses. Finally, defendant was found to be arbitrary and capricious and was ordered to pay $1,000 in attorney’s fees to claimant’s attorney.
On April 29,1994, defendant filed a motion to amend or clarify the judgment. The motion alleged that defendant had paid weekly compensation benefits tojgclaimant for the period ordered in the trial court’s judgment and had paid his medical expenses. A hearing on the motion was held on May 27, 1994. Thereafter, on June 9, 1994, the trial court rendered an amended judgment which deleted the award for compensation benefits from September 5, 1991 through December 21, 1991 on the basis that they had already been paid by defendant. The amended judgment further deleted the award for medical expenses on the basis that they had already been paid by defendant, and reduced the award for attorney’s fees to $500. The *789 award for supplemental earnings benefits was not changed by the amended judgment, From the amended judgment, claimant has appealed.[1]
ASSIGNMENTS OF ERROR
Claimant assigns the following errors by the trial court: (1) the court erred by failing to find a causal connection between claimant’s mental injury and his work-related accident; (2) the court erred by failing to find claimant temporarily/permanently disabled subsequent to February 8, 1992; and (3) the court erred in failing to award penalties and attorney’s fees based on defendant’s arbitrary and capricious conduct.
^DISCUSSION
We first address claimant’s second assignment of error, namely that the trial court erred in failing to find him temporarily or permanently disabled subsequent to February 8,1992. Initially, of course, a worker’s compensation claimant must establish that he has been injured as the result of a work place accident. La.R.S. 23:1031. Further, to qualify for temporary or permanent total disability benefits, a claimant must prove by “clear and convincing evidence, unaided by any presumption of disability, that [he] is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment....” La.R.S. 23:1221(l)(e) & (2)(e). The trial court’s conclusions regarding the medical evidence are factual and thus are subject to the manifest error standard of review.[2] Fox v. National Gypsum, Inc., 96-25 (La.App. 5th Cir. 4/30/96), 673 So.2d 1223, 1228; see Rosell v. ESCO, 549 So.2d 840 (La.1989).
Having reviewed the record, we cannot say that the trial court was clearly wrong in finding that claimant is not entitled to either temporary or permanent total disability benefits. In regard to claimant’s physical condition, the evidence on the whole supports the finding that he has suffered degenerative changes, rather than injuries resulting from the work place accident. For example, Dr. Neitzschman interpreted claimant’s MRI as showing degenerative changes which preceded the lipwork place accident. Similarly, Dr. Horn concluded that the MRI results were consistent with degenerative changes.
During his October 21, 1991 examination, Dr. Gorbitz did relate focal herniation at claimant’s L5-S1 and L4-5 discs to the work place accident. Subsequently, however, on December 23, 1991, Dr. Gorbitz found claimant to be essentially back to normal and accordingly released him to return to light duty work. Later, on February 21,1992, Dr. Gorbitz examined claimant and discovered no objective neurological findings.
The results of the FCE also support the finding that claimant is not entitled to temporary or permanent total disability benefits. As mentioned previously, Ms. Strieker stated that, because of claimant’s lack of effort, the FCE did not reveal his true maximum capabilities. Nevertheless, the evalua *790 tion did establish claimant’s minimum level of capabilities. Based on this minimum level, the rehabilitation service issued a report stating that claimant was capable of earning $4.25 to $7.00 an hour in the light to medium category of employment, and that such employment was available to him.
In short, there is not clear and convincing evidence in the record that claimant is physically disabled from engaging in any employment or self-employment. Likewise, we conclude that claimant’s mental condition does not entitle him to temporary or permanent total disability benefits.
Pretermitting the question of whether claimant’s work place accident caused his mental condition, there is simply not clear and convincing evidence in the record that he is disabled from working by the condition.[3] For example, Dr. Anastasio Inopined that claimant was being treated appropriately for his condition by Dr. Mitchell. As a result, according to Dr. Anastasio, claimant is not psychologically disabled.
Moreover, the report issued by Drs. Gor-man and Stamps which states that claimant is psychologically disabled is contradicted by the subsequent deposition testimony of Dr. Stamps. In his deposition, Dr. Stamps stated that claimant was not psychologically disabled. In sum, based on Dr. Anastasio’s opinion that claimant is not psychologically disabled, along with the inconsistencies in Dr. Stamps’ opinion, we conclude that claimant did not present clear and convincing evidence that he is psychologically disabled.
Based on the foregoing, we find no manifest error in the trial court’s ruling that claimant is not entitled to temporary or permanent total disability benefits.[4]
Next, claimant asserts that the trial court erred in failing to award penalties and attorney’s fees based on defendant’s arbitrary and capricious conduct. The trial court did award claimant attorney’s fees in the amount of $500. Pursuant to La.R.S. 23:1201(F)(2), an employer or insurer is liable for penalties for withholding benefits without evidence to “reasonably controvert” the employee’s right to compensation and medical benefits. In addition, La.R.S. 23:1201.2 provides that an employer or insurer who discontinues payment of compensation benefits shall be liable for attorney’s fees when the discontinuance is found to be arbitrary, capricious, or without probable cause.
| i2We have previously held that La. R.S. 23:1201 is a penal statute and thus must be strictly construed. Ball v. Dawsey Corp., 95-669 (La.App. 5th Cir. 11/28/95), 665 So.2d 566, 569. Claimant complains of defendant’s failure to reimburse him for certain medical expenses incurred after he had been fired from his job. Having reviewed the record, we cannot say that defendant behaved in an arbitrary and capricious manner. Following his termination, claimant returned to be examined by Dr. Gorbitz, who had previously released him to return to light duty work. At this examination, in February of 1992, Dr. Gorbitz discovered no objective findings of injury. Accordingly, defendant had a valid basis to refuse claimant any additional benefits or expenses following his termination. Consequently, claimant is not entitled to penalties or any additional attorney’s fees.
Finally, we note that defendant answered the appeal, seeking to have the award of $500 in attorney’s fees to claimant overturned. The trial court awarded the attorney’s fees pursuant to La.R.S. 23:1201.2, based on its finding that defendant had handled the claim for benefits in an arbitrary and capricious manner. We do not address the merits of this issue because we conclude that defendant’s answer was untimely filed.
Pursuant to La.C.C.P. art. 2133, an appel-lee who desires to have the judgment modi- *791 fled, revised, or reversed in part must file an answer to the appeal not later than fifteen days after the return day or the lodging of the record, whichever is later. In the instant case, the trial court did not set a return day for the appeal. As stated in La.C.C.P. art. 2125, the return day “shall be thirty days from the date estimated costs are paid if there is no testimony to be transcribed and lodged with the record and forty-five days from the date such costs are paid if there is testimony to be transcribed, unless the trial court fixes a lesser period.”
|13On August 5,1994, the trial court signed a waiver of payment of costs on behalf of claimant. The record, which contains transcribed testimony, was filed in this court on November 21, 1994. Defendant’s answer was not filed until February 15, 1995, well outside the fifteen day period following the lodging of the record allowed by La.C.C.P. art. 2133. Accordingly, defendant’s answer was not timely filed. As a result, defendant is not entitled to challenge the trial court’s award of attorney’s fees to claimant. '
Based on the foregoing, the judgment appealed from is affirmed in all respects.
AFFIRMED.

. This is the second time the instant case has been before us. Initially, we vacated and set aside the amended judgment and reinstated the original judgment on the basis that the amended judgment violated La.C.C.P. art. 1951. Bou-dreaux v. Prod. Management, Inc., 94 — 960 (La. App. 5th Cir. 11/15/95), 665 So.2d 497, 499. Further, we held that claimant's appeal was untimely because it had been filed within the applicable delays from the rendering of the amended judgment, which we held to be an absolute nullity, rather than the original judgment. Id. at 500. Thus, we refused to address the merits of claimant’s appeal. Id. However, the supreme court granted writs and held that defendant’s motion to clarify or amend the judgment should have been treated as a timely motion for a new trial. Boudreaux v. Prod. Management, Inc., 95-3000 (La.2/9/96), 667 So.2d 543. Accordingly, the case was remanded to us for a review of the merits. Id.

. This is so even though all of the medical evidence was submitted via reports and deposition testimony. As we recently reiterated in Ramo-gasse v. Lafitte Welding Works, 93-682 (La.App. 5th Cir. 12/13/95), 666 So.2d 1176, 1179, the manifest error standard is premised on the "proper allocation of trial and appellate functions between the respective courtsfj” as well as on the trial court's opportunity to view the demeanor of witnesses, (quoting Virgil v. American Guar, and Liab. Ins. Co., 507 So.2d 825, 826 (La.1987)). Thus, even where factual findings are based solely on deposition testimony and reports, the manifest error standard applies. See Fiffie v. Borden, Inc., 618 So.2d 1199, 120.1 (La.App. 5th Cir.), writ denied, 624 So.2d 1235 (La.1993).

. Pursuant to La.R.S. 23:1021(7)(c), a claimant must prove a mental injury caused by a work place accident by clear and convincing evidence. In contrast, a claim for a physical injury must only be proven by a preponderance of the evidence. Walton v. Normandy Village Homes Ass’n, Inc., 475 So.2d 320, 324 (La.1985).

. In his first assignment of error, claimant argues that the trial court erred in failing to find a causal connection between his mental injury and his work place accident. As we have determined that claimant is not entitled to temporary or permanent total disability benefits, this assignment of error is necessarily rendered moot.