| ¶ LANDRIEU, Judge.
In this workers’ compensation case, the judge denied the compensation carrier’s motion to reduce the claimant’s benefits. The compensation carrier now appeals. For the reasons set forth below, we reverse the judgment.
The claimant was injured in the course and scope of his employment on October 26, 1994. Because the treating physician had stated that the claimant could return to gainful employment with restrictions, Bella Donna, his employer, and the Louisiana Workers’ Compensation Corporation (LWCC) retained a vocational rehabilitation counselor, Jeanne Lillis of Younger & Associates, to work with the claimant.
Believing the claimant was refusing to cooperate with the vocational rehabilitation counselor, LWCC filed a motion and order to institute vocational rehabilitation. In the motion, LWCC also requested the claimant’s benefits be reduced by 50% for each week that he failed to comply with the vocational rehabilitation order.
The workers’ compensation judge, on June 18, 1998, found the claimant had cooperated with the rehabilitation counselor and, therefore, could not be penalized under La.Rev.Stat. 23:1226. The court noted that the claimant had met with the counselor in four scheduled meetings and had followed up on some of the jobs laidentified, “though he failed to inform the counselor of his efforts.” The court further found that the counselor had been permitted to evaluate and assist the claimant. Finally, the judge ordered the claimant to continue cooperating with the counselor, instructing the claimant to meet with the counselor monthly for purposes of assisting the claimant in job placement “if he is released to work by his treating physician.”
The LWCC first asserts the judge manifestly erred in finding the claimant had cooperated with the rehabilitation counsel- or. It next asserts the claimant’s benefits should have been reduced when, upon his attorney’s advice, the claimant refused to cooperate with the counselor.
The claimant is 55 years old. As a result of the accident, he is receiving social security disability payments in addition to workers’ compensation benefits. He has been released to perform sedentary or light work with the following restrictions: lifting objects weighing more than 20 pounds, stooping, bending, prolonged sitting or standing in the same position, repetitive looking up and down, or working with his arm above his shoulder. His tort suit against a third party is pending. He suffers from multiple herniated cervical and lumbar discs. He takes muscle relaxants and pain medication on a daily basis. The pain is characterized as chronic, but the claimant testified that he has good days and bad days.
The claimant met with the counselor four times over four months, March to June of 1997; however, the second meeting was cut short because the claimant was not feeling well. During the third meeting, the counselor conducted various vocational tests on the claimant. At the fourth meeting on June 12, 1997, the counselor discussed various job types and informed the claimant that she would |3assist him in applying for any jobs that interested him. She also stated that she would show him how to look for job openings on the Job Services computer.
The counselor sent twelve follow-up/correspondence letters to the claimant at his attorney’s office and provided the claimant with fourteen job possibilities. The counselor testified the claimant failed to contact her or to send her a “job log,” which she deemed necessary to assist the claimant in finding work. After the fourth meeting, the counselor was not allowed to meet with the claimant upon the advice of his attorney, who informed the counselor “that this *262 would have to be the last meeting because [she] was hurting his client’s case by identifying available employment.” The counselor learned the claimant had instituted a tort suit against a third party. The claimant’s attorney believed that the claimant had sufficiently complied with the order of rehabilitation, that it was “enough” rehabilitation, and, according to his letter of July 1, 1997, that the law required no further meetings. The counselor opined that the claimant could have found employment had he actively participated in the vocational services she offered.
The claimant had primarily worked as a waiter since leaving the Navy over thirty years ago. Because of the current restrictions, however, he cannot return to that line of work. The job possibilities identified by the counselor included toll taker, unarmed security guard, loss prevention officer, telephone and/or customer service, and concierge. The claimant testified that he had applied for four concierge positions, two of which were on the counselor’s list, and had been interviewed. All of the interviewers told him that he was not qualified for such a position. The claimant did not inform the counselor of his activities and could not remember the persons who had interviewed him, except to say that they had all |4been women. He testified that he had applied for the positions during the four-month period between March and June of 1997.
The claimant’s attorney admitted at the hearing that he had advised both his client and the counselor that the law required no further meetings. He also characterized the counselor as “too gung ho” in fulfilling her duties and asserted that LWCC’s attempt to help his client find a job was merely an attempt to limit its own exposure.
As provided in La.Rev.Stat. 23:1226 subd. B(l), the “goal of rehabilitation services is to return a disabled worker to work, with a minimum of retraining, as soon as possible after an injury occurs.” The nature and extent of rehabilitation services may vary, depending on the worker’s abilities and his need for retraining. See La.Rev.Stat. 23:1226 subd. B(l). Refusal to accept rehabilitation as deemed necessary by the judge shall result in a fifty-percent reduction in weekly compensation benefits for each week of the refusal. La.Rev.Stat. 23:1226 subd. E.
Factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 7 (La. 7/1/97), 696 So.2d 551, 556. Under this standard, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony or the facts. Stobart v. State of Louisiana, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). Notwithstanding, the reviewing court has a constitutional duty to review facts and to determine if the facts support the trial court’s judgment. Ambrose v. New Orleans Police Dept. Ambulance Serv., 93-3099 (La.7/5/94), 639 So.2d 216.
IsOn appeal, LWCC contends the claimant’s attorney did not want his client to obtain employment so as to increase any award for lost wages in the pending third party tort action. It cites two cases, Banks, supra and Ramogasse v. Lafitte Welding Works, 93-682 (La.App. 5 Cir. 12/13/95), 666 So.2d 1176, for the proposition that a claimant’s benefits may be reduced by fifty percent for refusing rehabilitation services offered by the employer. In both cases, the claimant had refused such services on the “ill-founded advice” of counsel.
Mr. Winfrey incorrectly argues that the claimants in both cases had refused all rehabilitation services, including those ordered by the lower courts. In Ramogasse, the claimant, upon the advice of his counsel, did refuse rehabilitation services when first contacted by the rehabilitation counselor. In Banks, however, as in the in *263 stant case, the claimant met with the rehabilitation counselor on several occasions and underwent skills and ability testing. The claimant, on the advice of his counsel, refused further rehabilitation services when the rehabilitation counselor attempted to schedule a meeting with the claimant after providing his attorney with a list of potential jobs. Mr. Winfrey, in contrast, maintains he adequately complied with the rehabilitation order of the workers’ compensation judge, even though he might not have satisfied every request made by the counselor.
We disagree. The workers’ compensation judge may have been justified in finding that the claimant had cooperated with the vocational rehabilitation counselor through June 12, 1997. However, the evidence in the record is clear that, since the date of the last meeting in the attorney’s office, the claimant, upon his attorney’s advice, has refused to meet with the counselor or to participate in vocational rehabilitation services. We find this case to be indistinguishable from | ¿Banks, wherein the claimant also refused to continue meeting with a rehabilitation counselor upon his attorney’s advice.
The claimant argues that the penalty provision of La.Rev.Stat. 23:1226 subd. E can only be triggered by the refusal of a “retraining program,” because Paragraph E discusses such programs. However, the penalty provision is more general in its language, providing for a reduction in benefits for a claimant’s “[r]efusal to accept rehabilitation as deemed necessary by the workers’ compensation judge.” Moreover, the refusal of rehabilitation services of any kind, including a retraining program, would thwart the goal of rehabilitation services set forth in La.Rev.Stat. 23:1226 subd. B(1), that is, the return of the worker to employment. Here, the counselor testified that once-a-month meetings were sufficient, though she also believed the claimant needed to be more active in finding employment, including the keeping of a job log. The judge agreed that monthly meetings and cooperation with the counsel- or were necessary when she ordered continued rehabilitation, instructing the claimant to cooperate with the counselor and to meet with her once a month. Thus, we believe that the claimant, when he declined to meet again with the rehabilitation counselor upon his attorney’s “ill-founded advice,” refused to accept rehabilitation as had been deemed necessary by the workers’ compensation judge.
Accordingly, the judgment of June 18, 1998, denying LWCC’s request for a reduction in benefits pursuant to La.Rev. Stat. 23:1226 subd. E is reversed. The claimant’s weekly benefits are ordered reduced by fifty percent commencing on July 1, 1997, and continuing until the date of the judgment on June 18,1998.
REVERSED.
McKAY, J. DISSENTS WITH REASONS.