666 So.2d 1176 (1995)
Ray RAMOGASSE, Jr.
v.
LAFITTE WELDING WORKS.
No. 93-CA-682.
Court of Appeal of Louisiana, Fifth Circuit.
December 13, 1995.
*1177 Philip A. Costa, Weigand, Levenson & Costa, New Orleans, for Plaintiff/Appellant.
John R. Miller, Metairie, for Defendant/Appellee.
Before KLIEBERT, GOTHARD and CANNELLA, JJ.
GOTHARD, Judge.
Claimant, Ray Ramogasse, Jr., appeals a decision by the Office of Worker's Compensation which denied his request that the defendants, Lafitte Welding Works, Inc., and Aetna Insurance Co., be required to pay for lumbar surgery, and also reduced his compensation benefits by fifty percent for refusing to undergo rehabilitation training. For the following reasons, we affirm.

FACTS
On July 9, 1990, the claimant ("Ramogasse") sustained a back injury while in the course and scope of his employment for Lafitte Welding Works. Immediately following the injury, he was treated by Dr. Howard Nelson, who subsequently referred him to Dr. Thomas Cashio. Dr. Cashio ordered an MRI which was performed on August 22, 1990, and which revealed some degenerative change in the claimant's lower back, but no evidence of disc rupture or nerve root irritation. Following the MRI, Dr. Cashio recommended that Ramogasse return to light duty work.
Approximately two months after the accident, the claimant began treatment with Dr. Robert Fleming. Dr. Fleming, who remains the claimant's physician to the present day, initially diagnosed him as having a lumbar sprain superimposed upon a pre-existing degenerative lumbar disc at L5-S1. Dr. Fleming undertook a conservative course of treatment which failed to relieve the claimant's pain. When the claimant's condition did not improve, Dr. Fleming ordered that a nerve condition study be performed in December of 1990. The results of this study were within normal limits. The claimant's pain continued, however, leading Dr. Fleming to eventually recommend surgery.
The claimant was examined by Dr. Earl Rozas on January 23, 1991. Dr. Rozas noted some inconsistencies during the clinical examination, particularly on the straight leg raising test in the supine and sitting positions. These inconsistencies led Dr. Rozas to conclude that the claimant was exaggerating his symptoms. Dr. Rozas recommended that the claimant undergo a work hardening program or a functional capacity evaluation.
Subsequently, on May 30, 1991, the claimant was examined by Dr. John Cazale. Based on a lack of objective clinical findings, Dr. Cazale stated that he doubted whether or not the proposed surgical procedure would be of any benefit to the claimant. Instead, Dr. Cazale agreed with the recommendation of Dr. Rozas that the claimant undergo a work hardening program or functional capacity evaluation.
Due to the dispute in claimant's condition, the Office of Worker's Compensation appointed Dr. Walter Abbott, pursuant to La. R.S. 23:1123, to perform an independent medical examination of Ramogasse. On September 3, 1991, Dr. Abbott examined the claimant and took x-rays of his spine. Dr. Abbott concluded that the exam revealed the claimant's condition to be objectively normal. Also, the x-rays of claimant's spine were normal, save for a possible narrowing at L5-S1. In short, Dr. Abbott concluded that Ramogasse did not require surgery.
Doctors Rozas, Cazale, and Fleming all recommended that the claimant undergo rehabilitation training. On January 23, 1992, Beverly Mann, a vocational rehabilitation counselor, contacted the claimant's attorney, Richard Weigand, and offered rehabilitation services for the claimant. These services were refused by Mr. Weigand.
The case then proceeded to trial on the issues of whether the claimant required lumbar surgery and whether the defendants were entitled to reduce the claimant's benefits *1178 due to his refusal to accept rehabilitation services.

PROCEDURAL HISTORY
On June 4, 1992, the trial commenced before the hearing officer, Judge Milton Osborne, Jr. Live testimony was given by the claimant, Ms. Mann, and Barbara Heath, a claims representative for the defendant Aetna. The trial was kept open in order for the parties to submit deposition testimony and medical reports.
The trial reconvened on October 14, 1992. However, in the interim Judge Osborne had been removed from office. Thus, Judge Glynn Voisin presided as hearing officer over the second day of the trial. On the second day the parties submitted medical reports and depositions as exhibits, but no testimony was taken.
On February 15, 1993, Judge Voisin rendered judgment in favor of the defendants, holding that the requested lumbar surgery was not necessary and that the defendants were entitled to reduce claimant's benefits by fifty percent from the date of his refusal to undergo rehabilitation training. From this judgment, claimant has appealed.[1]

ANALYSIS
We begin by addressing the validity of the judgment rendered by Judge Voisin. As discussed above, the trial of this matter was initially heard by Judge Osborne. Before judgment was rendered, Judge Osborne was removed from his position by the Office of Worker's Compensation and replaced by Judge Voisin.
La.C.C.P. art. 1911 provides that "every final judgment shall be signed by the judge." We have interpreted this article to mean that the judgment shall be signed by the judge who presided at the trial. Louisiana Paving Co., Inc. v. St. Charles Parish Pub. Sch., 593 So.2d 892 (La.App. 5th Cir.1992). In Louisiana Paving, we held that a judgment was null and void because it had been signed by a judge other than the one who had presided over the trial. Id. at 893. Further, we found that the judge who signed the judgment did not qualify as a successor judge under La.R.S. 13:4209 because the judge who heard the case was still on the bench. Id. at 894. La.R.S. 13:4209 provides that in "all cases heard and taken under advisement of the district judge ... if the judge before whom a case is tried dies, resigns, or is removed from office, or if his term expires before rendering his judgment in the case, his successor in office shall decide the case from the evidence in the record...." La.R.S. 13:4209(A).
In the instant case, we find that La.R.S. 13:4209 is applicable. Judge Osborne, who initially heard the case and took it under advisement, was subsequently removed from office by the Office of Worker's Compensation. In this type of situation, the statute allows a successor judge to decide the case from the evidence in the record. Consequently, we hold that Judge Voisin's judgment is valid as that of a successor judge under La.R.S. 13:4209.[2]
*1179 Turning to the merits, Ramogasse's first assignment of error is that the trial court erred in denying his request for lumbar surgery. La.R.S. 23:1203(A) requires an employer to provide "necessary ... medical and surgical treatment" for an injured employee. Therefore, the question of whether the defendants must provide claimant with the requested surgery turns on whether the surgery is "necessary". This, of course, is a factual determination which is subject to the manifest error standard of review. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Claimant, however, contends that the usual manifest error standard does not apply here because the trier of fact, Judge Voisin, did not view the testimony and thus did not base his determination of credibility on the demeanor or tone of the witnesses. It is true that Judge Voisin did not view any of the medical witnesses because all of their testimony was presented via reports and depositions. However, the problem with claimant's argument is that, while the opportunity for the trial court to make credibility determinations based upon viewing the demeanor of the witnesses is a reason for the manifest error standard, it is not the only one.
As the Louisiana Supreme Court stated in Virgil v. American Guarantee and Liability Ins. Co., the manifest error standard is also premised on the "proper allocation of trial and appellate functions between the respective courts." 507 So.2d 825, 826 (La.1987), quoting Canter v. Koehring Co., 283 So.2d 716 (La.1973). That is, "Louisiana's three-tiered court system allocates the fact finding function to the trial courts." Id. To illustrate this principle, in Virgil the Court held that the manifest error standard applies even "when the evidence before the trier of fact consists solely of written reports, records and depositions." Id. Subsequently, in Fiffie v. Borden, Inc., we followed Virgil and applied the manifest error standard to factual findings that were based solely on deposition testimony. 618 So.2d 1199, 1201 (La. App. 5th Cir.1993).
We feel that the same principle, namely that making factual findings is the province of the trial court as opposed to the appellate court, is applicable here. Therefore, we will review the lower court's factual findings on this issue under the manifest error standard, even though Judge Voisin made his decision regarding the necessity of lumbar surgery solely on the basis of medical reports and deposition testimony.
Upon reviewing the record, we find the trial court's ruling that surgery is not necessary for Ramogasse to be reasonable and supported by the evidence. Of the six physicians who have examined the claimant, only one, Dr. Fleming, has stated that surgery is necessary. Moreover, there is credible evidence in the record which creates doubt about the severity of Ramogasse's condition. For example, Dr. Rozas testified that the claimant was exaggerating his symptoms and Dr. Abbott, appointed by the Office of Worker's Compensation to perform an independent examination of Ramogasse, testified that the claimant's pain complaints were "a bit on the hysterical side." Dr. Abbott, in fact, testified that not only was surgery inappropriate for the claimant, but that it would likely cause him more problems than it would solve.
Nevertheless, the claimant argues that the trial court erred by not giving Dr. Fleming's testimony greater weight than that of the other physicians. The claimant's argument is based on the rule that the testimony of a treating physician is to be given greater weight than that of a physician who sees the claimant for litigation purposes only. Brock v. Morton Goldberg Auction Galleries, Inc., 93-1078 (La.App. 4th Cir. 1/13/94), 631 So.2d 512, writ denied, 635 So.2d 1105 (La.1994).
We have recently recognized that "the testimony of the treating physician is entitled to great weight, [but] the trial court is not bound by it...." Jackson v. A.I.A., 94-371 (La.App. 5th Cir. 11/16/94), 646 So.2d 1088. Thus, the trial court does not have to blindly follow the treating physician's testimony when the weight of evidence points in the opposite direction. Here, as discussed earlier, there is sufficient evidence in the record to support the trial court's finding that surgery is not necessary for the claimant, despite the testimony of his treating physician.
*1180 Furthermore, even Dr. Fleming's testimony, taken as a whole, does not support the argument that surgery is necessary for the claimant. For example, Dr. Fleming testified that the only objective clinical findings exhibited by the claimant were intermittent minimal muscle spasms. Additionally, Dr. Fleming stated that the claimant had no neurological deficits and had no evidence of instability at the L5 level. Also, the doctor stated that he had found no impingement on the claimant's nerve roots. Perhaps most importantly, Dr. Fleming's testimony was not that surgery would correct Ramogasse's condition; instead, the doctor stated that surgery might improve his condition.
In summary, then, we cannot say the trial court was clearly wrong in finding that lumbar surgery is not necessary for Ramogasse. Accordingly, the claimant's first assignment of error lacks merit.
Next, claimant asserts that the trial court erred in allowing the defendants to reduce his benefits by fifty percent for his refusal to undergo rehabilitation training. Again, based on Virgil, supra, we will review the trial court's factual findings on this issue under the manifest error standard. The relevant statutory provision is La.R.S. 23:1226(A), which provides that when "an employee has suffered an injury ... which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services." Further, the statute contains a penalty provision which states that the "[r]efusal to accept rehabilitation as deemed necessary by the hearing officer shall result in a fifty percent reduction in weekly compensation...." La.R.S. 23:1226(E).
The record reveals that Doctors Rozas and Cazale both testified that the claimant should undergo rehabilitation training. Additionally, Dr. Fleming, the claimant's personal physician, recommended a functional capacity evaluation be performed. Based on the foregoing, we find that the trial court did not err in finding rehabilitation services to be necessary for the claimant.
Moreover, Beverly Mann, a vocational rehabilitation counselor, testified that she was contacted by the defendant Aetna and requested to set up rehabilitation services for the claimant. Ms. Mann then contacted Richard Weigand, one of the claimant's attorneys, and offered rehabilitation services for the claimant. According to Ms. Mann's testimony, Mr. Weigand not only rejected the offer, but would not even discuss the topic with her. Ms. Mann's testimony as to this matter is uncontroverted. Therefore, we must agree with the trial court's finding that the defendants offered Ramogasse rehabilitation services, which he refused.
We have previously held that an employer cannot decide unilaterally to reduce an employee's benefits for failing to undergo rehabilitation. Washington v. Dan Kelly Warehouse, Inc., 499 So.2d 1167 (La.App. 5th Cir.1986). Instead, the employer must present the issue to a hearing officer for a determination of whether the claimant's benefits may be reduced. That is precisely what the defendants in this case did. The record reveals that the evidence presented to the hearing officer supports the finding that the claimant rejected necessary rehabilitation services. Therefore, we hold that the trial court did not err in allowing the defendants to reduce the claimant's benefits by fifty percent from the date of his refusal to undergo rehabilitation training.
Based on the foregoing, we find no error in the trial court's decision. Therefore, the judgment appealed from is affirmed.
AFFIRMED.
KLIEBERT, J., concurs.
KLIEBERT, Judge, concurring.
I concur in the results reached by the majority, but not necessarily for the reasons stated by the majority opinion.
NOTES
[1] This case was originally noticed for appeal on March 15, 1993. However, the record we received from the lower court was incomplete because the transcript from October 14, 1992, the second day of the trial, had been lost. We then remanded the case to the trial court so that it could take appropriate action to complete the record. Subsequently, in a letter dated July 29, 1993, the parties stipulated that the only action taken on the second day of trial was the submission of exhibits by each party. Thus, the missing transcript does not contain any trial testimony. Moreover, the exhibits which were introduced on the second day of the trial are included in the record. Accordingly, we find the record to be complete and ready for review. On this basis, we denied claimant's motion to remand, which relied on Jacobs v. Grayson, 432 So.2d 1036 (La.App. 1st Cir.1983). In Jacobs, the court remanded to the trial court in order to reconstruct testimony that was missing because the transcript had been lost. Here, as stated earlier, no testimony has been lost due to the missing transcript.
[2] The Hearing Rules of the Office of Worker's Compensation do not specifically provide for a successor judge. However, § 2105 of the Rules states that "[a]ny matter of practice or procedure not delineated herein and not in conflict with either the Workers' Compensation Act or these rules will be guided by practice and procedure followed in the district courts of this state...." Additionally, § 2159 of the Rules recognizes that successor judges may be appointed in worker's compensation cases. Based on the foregoing, we find that La.R.S. 13:4209 is applicable to this worker's compensation case.