974 So.2d 25 (2007)
Billie FREEMAN, Plaintiff-Appellee
v.
J.P. Morgan CHASE, Defendant-Appellant.
No. 42,716-WCA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 2007.
*27 Ungarino & Eckert, L.L.C. by Brian D. Smith, J. Michael Nash, Shreveport, Christopher C. Broughton, for Appellant.
Law Offices of Street & Street by C. Daniel Street, Monroe, for Appellee.
Before PEATROSS, MOORE and LOLLEY, JJ.
MOORE, J.
The employer and its insurer, J.P. Morgan Chase and Liberty Mutual Insurance Company (collectively referred to as "Chase"), appeal a judgment that refused to order either a forfeiture of workers' compensation benefits for intentional misrepresentations by the claimant or a reduction of benefits for the claimant's failure to accept rehabilitation services. The claimant, Billie Freeman, responds that Chase did not properly plead these defenses and, at any rate, the Workers' Compensation Judge ("WCJ") was not plainly wrong to reject them. By answer, she seeks additional attorney fees for defending the appeal. We affirm the judgment and award additional attorney fees.

Factual and Procedural Background
Ms. Freeman was employed as a research analyst at the Chase Bank branch on Delta Drive in Monroe at an average weekly wage of $409.56. On April 25, 2002, she was moving a gondola of office files that weighed about 500 lbs. As she was pushing the gondola, her "back slipped" and she "felt a pop" in her back. She reported the accident and finished that day's work, but did not come in the next *28 day; after that, she worked intermittently but could never finish a day because of back pain. She has not worked at all since October 2002.
Ms. Freeman went to her family doctor, Dr. Floyd Jones, who referred her to a pain management doctor, Dr. Vincent Forte. She testified that Dr. Forte used medications and physical therapy; these gave her temporary relief but the lower back pain always returned. Dr. Forte referred her to an orthopedic surgeon, Dr. Brian Bulloch, who initially thought she was not a good candidate for surgery. However, he eventually performed a fusion at L4-5 and inserted four screws in her spine in October 2003. He then placed her on physical therapy. Ms. Freeman saw Dr. Bulloch for the final time in July 2004, and was certain that he has never released her to return to work.
Ms. Freeman also continued to see Dr. Forte, who apparently kept her well medicated; she admitted taking, simultaneously, Zanaflex, Ambien, Neurontin, Remeron, Seroquel, Dantrium, Cymbalta, Protonix and Synthroid; by mid-2005, she was also taking OxyContin and Duragesic, strong narcotics. She admitted that her sister checked her into the detox center at E.A. Conway, and she got off the OxyContin, but testified that the drugs she continues to take for her pain leave her dizzy and "wiped out."
Chase did not contest the work-related accident and injury; it began paying temporary total disability ("TTD") benefits of $273 a week and covered her doctor visits, surgery, therapy and pharmacy expenses.
In 2003, Chase hired Cascade Disability Management to try to return Ms. Freeman to work. Cascade's agent; Sonya Sims, took no action while Ms. Freeman was recovering from surgery, but in early 2004 asked Dr. Bulloch about her progress; he replied that Ms. Freeman would reach maximum medical improvement by the end of April 2004 and he would refer her to the FIT program. In June, Dr. Bulloch reported that Ms. Freeman had finished the FIT program but still needed additional therapy; a functional capacity evaluation taken around this time found she could perform sedentary work with restrictions on occasional lifting, pulling, climbing and other activities.
Ms. Sims then ran a labor market survey, identifying four jobs that were available within Ms. Freeman's medical restrictions, paying $6.50 to $7.00 an hour. Ms. Sims testified that she sent this information to Ms. Freeman by certified mail, return receipt requested, and that Ms. Freeman signed the receipt on September 20, 2004; Ms. Freeman did not recall receiving it, but acknowledged her signature on the receipt. Ms. Sims also sent the survey to Dr. Bulloch, who approved the jobs on October 15. Meanwhile, Ms. Sims phoned Ms. Freeman to ask why she had not followed up on any of the job leads. According to Ms. Sims, Ms. Freeman said she was still taking Lortab and Zanaflex, and could not drive; Ms. Freeman did not recall this phone call.
In January 2005, Ms. Sims identified another job within Ms. Freeman's restrictions; Dr. Bulloch approved it on February 10 and Dr. Forte deferred to Dr. Bulloch's judgment. However, Ms. Freeman still took no action. Ms. Sims testified that since that time, she had not located any more available jobs for Ms. Freeman.
On October 1, 2005, Chase reduced Ms. Freeman's benefits to $561.43 a month of supplemental earnings benefits ("SEB"). Ms. Freeman filed the instant contested claim in January 2006, seeking a reinstatement of benefits, a lump sum of past-due benefits, penalties and attorney fees.
*29 Chase filed a standard form answer, denying all allegations. Under "affirmative defense" it alleged, "The claimant has violated Section 1208 by misrepresenting the occurrence of an accident and/or the manner in which the accident occurred and/or his/her complaints regarding the alleged accident." A scheduling conference order in May 2006 listed five issues for trial, but not the defense of fraud under § 1208. However, Chase's pretrial statement, filed June 22, 2006, listed as an issue for trial, "Whether the claimant committed a violation of Section 1208 by misrepresenting the manner in which the accident occurred, the extent of her complaints or physical symptoms and/or medical history" (emphasis added).

Trial Evidence and Judgment
At trial in December 2006, Ms. Freeman objected to the § 1208 defense of fraud on grounds that Chase had not properly pled it. The WCJ overruled the objection, ruling the pretrial statement placed her on adequate notice.
Ms. Freeman described her accident and course of treatment; she maintained that even after the fusion, she is still getting progressively worse. She admitted going to detox in June 2005 and getting off Oxy-Contin, but still taking lots of drugs. She was certain that Dr. Bulloch had never released her to return to work, but Chase suddenly reduced her benefits in October 2005. She was also certain that no one from Chase or Cascade contacted her before this reduction. After the reduction, she called and was told that it happened because she turned down offered work; she testified that with all the drugs she was taking, she could not possibly work.
On cross-examination, she admitted giving a deposition in September 2006 in which she stated that all her prior back problems were "menstrual" in nature, and that she was in one auto accident in 2003 (after the instant injury). However, when confronted with a sheaf of medical records going back to the 1970s, she conceded that she had suffered a host of medical problems, including lower back pain dating back to 1987, for which she received frequent medical treatment and drugs. She also admitted a 1987 car accident. She did not deny her signature on the return receipt of the labor market survey, but explained that she was probably so drugged up she just did not remember signing it. She also admitted that for a period in the late 1990s, she was drawing SSI, and applied to work at Chase when those benefits ran out. She insisted, nonetheless, that she never intended to defraud Chase with this claim.
The only other witness at trial was Sonya Sims, who related her handling of Ms. Freeman's claim as outlined above. She was not aware if the jobs she submitted to Dr. Bulloch were still available by the time he finally approved them. She testified that Dr. Bulloch approved four jobs in October 2004 and one job in February 2005, Ms. Freeman failed to apply for any of them, and that Cascade closed its file in April 2005. She was not asked, however, why Chase waited until October 2005 to reduce benefits.
The WCJ ruled from the bench, stating it was unable to find fraud or any intentional misrepresentations by the claimant. It further found that Ms. Freeman was indeed unable to earn 90% of her pre-injury wage, based on Dr. Bulloch's release to sedentary work in January 2003. However, when Chase reduced benefits, the jobs were no longer available; in addition, Chase failed to prove that the jobs were available when Dr. Bulloch approved them. The WCJ held that the employer cannot base its reduction on events that happened nine months earlier. It therefore reinstated "full benefits" of $273.04 a *30 week and awarded of lump sum of $8,704.36 for past due benefits. Finally, the WCJ found Chase's decision to reduce benefits arbitrary and capricious. She assessed a penalty of $2,000 and attorney fees of $5,000. The instant appeal, followed.
Discussion: Forfeiture of Benefits
By its first assignment of error, Chase urges the WCJ erred in finding that Ms. Freeman did not misrepresent her previous medical history despite the fact that her deposition was clearly contrary to the medical records, showing a long history of back pain and treatment. Chase concedes the standard of review is manifest error, but shows that this court has at least once reversed a WCJ's finding of no fraud. Baker v. Stanley Evans Logging, 42,156 (La.App. 2 Cir. 6/20/07), 960 So.2d 351. Chase methodically contrasts Ms. Freeman's medical records with her deposition, in which she either denied or could not remember her medical complaints and treatment, urging that it is full of misrepresentation. Chase also contends that Ms. Freeman's decision to pursue this claim was motivated by her loss of SSI. It concludes that the only possible interpretation is that she misrepresented her prior medical history for the purpose of obtaining benefits.
Ms. Freeman responds that Chase failed to allege the defense of § 1208 fraud in its answer and thus cannot raise the issue on appeal. She cites La. C.C.P. art. 856, which requires fraud or mistake to be alleged with particularity. On the merits, she submits the WCJ was not plainly wrong. At trial, Chase stipulated that the accident occurred and was work-related, and it paid her TTD for over three years; since she was already drawing benefits, the fact that she could not recall an 18-year-old car accident or medical treatment dating to the 1970s could not be an intentional misrepresentation to obtain benefits. Also, most of her prior medical issues involved upper back, neck and head pain, not lower back. Finally, she drew SSI for a heart condition (Romano-Ward Syndrome) completely unrelated to back pain, and this had no effect on her claim.
In pleading fraud or mistake, the circumstances constituting fraud or mistake shall be alleged with particularity. La. C.C.P. art. 856. Chase's answer, citing § 1208 and the circumstances of and the complaints arising from the accident, did not allege misrepresentation of her preexisting health problems, and thus might run afoul of Art. 856. However, the WCJ is "not bound by the technical rules of evidence or procedure," so long as the judgment is based upon "competent evidence." La. R.S. 23:1317 A. The WCJ found that Chase gave Ms. Freeman adequate notice of the issue in its pretrial statement, filed some five months before trial. On this record we cannot say the WCJ abused its discretion in allowing Chase to present evidence of fraud under § 1208.
Forfeiture of benefits for false statements is governed by La. R.S. 23:1208, which provides in pertinent part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
* * *
E. Any employee violating this Section shall, upon determination by [the] workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
* * *
*31 The only requirements for forfeiture of benefits under § 1208 are (1) a false statement or representation, (2) willfully made, and (3) made for the purpose of obtaining or defeating any benefit or payment. Resweber v. Haroil Const. Co., 94-2708 (La.9/5/95), 660 So.2d 7, at 12, There is no requirement of prejudice to the employer; when the statute is satisfied, "benefits will be forfeited for the sole reason that the claimant has willfully and deliberately attempted to defraud the workers' compensation system, and no further requirements are to be imposed." Id., at 16; Johnikin v. Jong's Inc., 40,116 (La.App. 2 Cir. 9/21/05), 911 So.2d 413, writ denied, 2005-2251 (La.2/17/06), 924 So.2d 1020. Section 1208 encompasses false statements or representations concerning prior injuries, if made specifically for the purpose of obtaining compensation benefits. Nabors Drilling USA v. Davis, XXXX-XXXX (La.10/21/03), 857 So.2d 407, fn. 2; Johnikin v. Jong's Inc., supra.
Forfeiture is a harsh remedy and must be strictly construed. Wise v. J.E. Merit Constructors Inc., XXXX-XXXX (La.1/21/98), 707 So.2d 1214; Franklin v. HealthSouth, 41,458 (La.App. 2 Cir. 9/20/06), 940 So.2d 83. An inadvertent and inconsequential false statement would not result in forfeiture of benefits. Resweber. v. Haroil Const. Co., supra; Rosson v. Rust Constructors Inc., 32,789 (La.App. 2 Cir. 3/1/00), 754 So.2d 324; writ denied, XXXX-XXXX (La.5/26/00), 762 So.2d 1105. Section 1208 does not penalize any false statement, but only those willfully made for the purpose of obtaining benefits. Resweber v. Haroil Const. Co., supra. The WCJ's finding or denial of forfeiture will not be disturbed on appeal absent manifest error. Johnikin v. Jong's Inc., supra; Brooks v. Madison Parish Service Dist. Hosp., 41,957 (La.App. 2 Cir. 3/7/07), 954 So.2d 207, writ denied, XXXX-XXXX (La.5/18/07), 957 So.2d 155.
Several of Ms. Freeman's statements in deposition were plainly false, as when she denied being involved in any prior auto accidents, making any prior personal injury claims, or receiving medical treatment for her back since 1969. Chase interprets these as intentionally deceitful.
On close review, however, we cannot say that she made these misrepresentations willfully and for the purpose of obtaining benefits. Ms. Freeman sustained a serious back injury in April 2002, requiring major surgery in October 2003 and therapy through June 2004. She suffered the additional complication of drug dependency and continued taking strong drugs through the date of trial. In the face of these life-altering events, she may well have forgotten the 19-year-old auto accident and personal injury claim. She may have naively thought that her subsequent medical treatment (much of which was for her upper back and neck) was not important enough to disclose. Her inability to recall even recent events, like phone calls from Ms. Sims, suggest some genuine memory issues.
In short, Ms. Freeman's statements were admittedly false, but the circumstances of the case reasonably support the WCJ's finding that they resulted from her work-related accident, devastating injury and other complications rather than from a willful act to obtain benefits. We cannot say the WCJ was plainly wrong.
The case stands in sharp contrast to Baker v. Stanley Evans Logging, supra, and Franklin v. HealthSouth, supra. Those claimants failed to report post-accident income which would have entitled their employers to a statutory setoff (in Baker's case, a significant one). The "purpose" of such misrepresentations to obtain benefits is obvious; as noted, Ms. *32 Freeman's purpose, if any, in failing to recall a 19-year-old accident is not so obvious. Similarly, on the proper showing, a misrepresentation about the claimant's pre-injury health status may result in forfeiture, especially when the truth would undermine the showing of causation. Johnikin v. Jong's Inc., supra; Moore v. Transmissions Inc., 41,472 (La. App. 2 Cir. 9/27/06), 940 So.2d 694. Unlike in those cases, Chase has not shown that Ms. Freeman's current condition predated the work-related accident.
We are cognizant that Chase was required to prove only a false statement, not any resulting prejudice. However, we are bound to construe § 1208 strictly and to defer to the WCJ's findings of fact. This record easily shows that Ms. Freeman has endured a myriad of health problems and substance addiction, resulting in an inability to recall even recent events. Although her deposition contains false statements, on this showing we cannot disturb the WCJ's finding that she did not make them willfully and for the purpose of obtaining benefits. This assignment of error lacks merit.

Reduction of Benefits
By its second assignment of error, Chase urges the WCJ erred in finding the reduction of benefits was inappropriate, after the treating physician declared Ms. Freeman could return to work and approved several jobs, but she took no effort to apply for any of them. Chase argues that her failure to apply for the jobs was a refusal of rehabilitation, warranting a 50% reduction under La. R.S. 23:1226 B. In support, it cites several cases involving claimants who refused jobs or rehabilitation, resulting in reduced benefits or denial of further rehabilitation services. George v. Broadmoor Const., 96 1074 (La. App. 1 Cir. 3/27/97), 692 So.2d 22; Ramogasse v. Lafitte Welding Works, 93-682 (La.App. 5 Cir. 12/13/95), 666 So.2d 1176; Wilson v. Grosjean Contractors Inc., 28,831 (La.App. 2 Cir. 10/30/96), 682 So.2d 1264, writ denied, 97-0012 (La.2/7/97), 688 So.2d 510; Mendoza v. Leon's Plumbing Co., XXXX-XXXX (La.App. 4 Cir. 12/22/04), 892 So.2d 600. Chase concludes that on this record, the WCJ was legally wrong not to reduce Ms. Freeman's benefits.
Ms. Freeman responds that Chase did not raise this defense by answer and thus cannot' argue it on appeal. While refusal of rehabilitation may be a defense which must be "set forth affirmatively," La. C.C.P. art. 1005, we reiterate that the WCJ is not bound by the technical rules of evidence. La. R.S. 23:1217 A. Here, the WCJ accepted evidence as to rehabilitation and made factual findings on it. The issue is properly preserved for review.
Ms. Freeman contends that the cases cited by Chase are inapposite and one of them, Ramogasse v. Lafitte Welding, supra, actually holds that the employer cannot unilaterally reduce benefits but must first present the issue to the WCJ. Finally, she contends that she attended FIT sessions and had reasonable grounds to decline the, jobs; the WCJ's decision to deny the reduction was not plainly wrong.
When an employee has suffered a work-related injury, she is entitled to prompt rehabilitation services. La. R.S. 23:1226 A. The employer is responsible for selecting a licensed professional vocational rehabilitation counselor to evaluate and assist the claimant in job placement or vocational training. R.S. 23:1226 B(3)(a). If the employer refuses to provide these services, the claimant may file a claim for review; such claim must be heard on an expedited basis as provided by R.S. 23:1224 B. Id. The claimant must also accept rehabilitation, as set forth in R.S. 23:1226 B(3)(c):

*33 (c) The expedited procedure shall also be made available to the employer to require the employee's cooperation in the rehabilitation process. Refusal to accept rehabilitation as deemed necessary by the worker's compensation judge shall result in a fifty percent reduction in weekly compensation, including supplemental earnings benefits * * *[ ]
A plain reading of this provision shows that the 50% reduction hinges on refusal to accept rehabilitation as deemed necessary by the WCJ. An order of rehabilitation by the WCJ, perhaps by the "expedited process" of R.S. 23:1224 B, is obviously required, but there is no such order in the instant record. Chase's decision to reduce benefits appears to be the kind of "Unilateral decision" disapproved by the court in dictum in Ramogasse v. Lafitte Welding, supra. In the absence of such an order, the WCJ did not err in rejecting Chase's defense of reduction under R.S. 23:1226 B(3)(c).
Moreover, the WCJ found that Chase failed to prove that the jobs were still available by the time Dr. Bulloch approved them. In the context of SEB, La. R.S. 23:1221(3)(c)(i), an employer may discharge its burden of proving job availability by showing (1) the existence of a suitable job within the claimant's physical capabilities and within the claimant's or the jemployer's community or reasonable geographic region, (2) the amount of wages that an employee with claimant's experience and training can be expected to earn in that job, and (3) an actual job position available for that particular job at the time that the claimant received notification of the job's existence. Banks v. Industrial Roofing & Sheet Metal Works Inc., 96-2840 (La.7/1/97), 696 So.2d 551; Caparotti v. Shreveport Pirates Football Club, 33,570 (La.App. 2 Cir. 8/23/00), 768 So.2d 186, writ denied, 2000-2947 (La.12/15/00), 777 So.2d 1230. The job must still be available when the physician approves it. Lanthier v. Family Dollar Store, 2006-779 (La.App. 3 Cir. 11/2/06), 942 So.2d 732.
Ms. Sims notified Ms. Freeman about four jobs on September 20, 2004, but Dr. Bulloch did not approve them until October 15. While this lag does not seem unconscionably long, Ms. Sims had no idea whether the jobs were still available on the later date. She notified Ms. Freeman about one more job on January 21, 2005; Dr. Bulloch approved it on February 10, by which time Ms. Sims was again unaware if it was still open. Further, Chase was aware of Ms. Freeman's failure to act on the job leads as early as September 2004, but did not reduce her benefits until October 1, 2005, a full year later. The instant record does not show that any job within Ms. Freeman's restrictions was available when benefits were reduced. The WCJ was not plainly wrong in denying the request for reduction.
We would note parenthetically that Dr. Bulloch has approved all the suggested jobs, Dr. Forte has deferred to Dr. Bulloch's opinion, and no objective medical evidence has been introduced to show that Ms. Freeman cannot work. If in the future Chase can document that a job is still open by the time it is medically approved, a reduction of benefits in accordance with R.S. 23:1226 B(3)(c), or a recalculation of SEB to reflect her earning ability in accordance with R.S. 23:1221(3)(a), may well be appropriate. On the instant record, however, the WCJ did not err in denying the reduction. This assignment of error larks merit.

Attorney Fees on Appeal
By answer to appeal, Ms. Freeman requests additional attorney fees for defending the appeal. A worker's compensation *34 claimant is entitled to an increase in attorney fees to reflect additional time incurred in defending the employer's unsuccessful appeal. Frith v. Riverwood Inc., XXXX-XXXX (La.1/19/05), 892 So.2d 7. Bearing in mind the complexity of the case and the fact that the WCJ already awarded counsel $5,000 for its work at the trial level, we find an additional attorney fee of $2,500 is warranted. Adams v. Dependable Source Corp., XXXX-XXXX (La.App. 1 Cir. 5/4/07), 961 So.2d 1183; Cotton v. First Fleet, 2007-29 (La.App. 3 Cir. 5/2/07), 957 So.2d 229, writs denied, XXXX-XXXX, -1543 (La.10/5/07), 964 So.2d 947, 948.

Conclusion
For the reasons expressed, the judgment of the WCJ is affirmed in its entirety. Judgment is further rendered in favor of Billie Freeman and against J.P. Morgan Chase and Liberty Mutual for additional attorney fees of $2,500. Appellate costs are to be paid by the appellants.
AFFIRMED; ADDITIONAL ATTORNEY FEES AWARDED.