# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 16-105


**MARGARET GAINES**

**VERSUS**

**PINECREST SUPPORTS & SERVICES CENTER, ET AL.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT 02
PARISH OF RAPIDES, NO. 14-00406
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***

## JIMMIE C. PETERS
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.


**AFFIRMED.**


**GREMILLION, J., concurs in part, but dissents in part, finding that the defendant reasonably controverted the plaintiff's claims, and thus, should not have been assessed penalties and attorney fees.**

**Jeff Landry**
**Attorney General**
**Shane D. Williams**
**Assistant Attorney General**
**P.O. Box 1710**
**Alexandria, LA 71309-1710**
**(318) 487-5944**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **State of Louisiana, through Department of Health and Hospitals, Office for Citizens with Developmental Disabilities, Pinecrest Supports and Services Center**

**D. Lance White**
**Law Offices of Lance White**
**6618 Summerlin Drive**
**Zachary, LA 70791**
**(225) 326-7291**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Margaret Gaines**

**PETERS, J.**

The defendant, the State of Louisiana, through the Department of Health and Hospitals, Office for Citizens with Developmental Disabilities, and Pinecrest Supports and Services Center (referred to collectively as "Pinecrest"), appeals from a judgment denying its fraud defense based on the provisions of La.R.S. 23:1208 and awarding the plaintiff, Margaret Gaines, a judgment for indemnity and medical benefits, penalties, and attorney fees. For the following reasons, we affirm the judgment in all respects.

## DISCUSSION OF THE PROCEDURAL HISTORY

Pinecrest, located in Pineville, Louisiana, is a state institution providing treatment for persons with intellectual and developmental disabilities, including assisted living facilities.[1] Ms. Gaines began employment with Pinecrest in October of 2002, and in October of 2013, held the position of residential services specialist, level 2 (RSS2), working in Home 601A. She claims to have suffered work-related injuries on October 13, 2013,[2] as she was administering to the needs of the clients under her care.[3]

On January 21, 2014, Ms. Gaines filed a disputed claim for compensation, penalties, and attorney fees based on Pinecrest's failure to pay her indemnity benefits. In its answer to the claim, Pinecrest disputed her right to compensation on the merits and further asserted its right to an offset pursuant to La.R.S. 23:1225,

---

[1] Neither party to this litigation alluded to Pinecrest's function, and that information is derived from *Harrell v. Dep't of Health and Hospitals*, 10-281, 10-282 (La.App. 1 Cir. 9/10/10), 48 So.3d 297.

[2] The Form 1008 filed by Ms. Gaines asserts only an injury to her shoulder and back on October 14, 2013. However, much of the evidence as well as the WCJ's reasons for judgment and the judgment itself make reference to the date of the accident as October 13, 2013. It appears that Ms. Gaines sustained the injury on October 13, and sought medical attention on October 14. Whether the accident occurred on October 13 or October 14 does not appear to be at issue on appeal, and we will generally refer to the date of the accident as October 13.

[3] The inhabitants of Pinecrest's assisted living facilities are referred to as "clients."

La.R.S. 23:1212, La.R.S. 23:1223, or La.R.S. 23:1206 as an alternative defense in the event the workers' compensation judge (WCJ) should rule in her favor. Additionally, Pinecrest asserted a reservation of its right to amend its answer in order to plead the La.R.S. 23:1208 fraud defense; and on June 25, 2014, Pinecrest amended its answer to allege that Ms. Gaines had committed fraud in making her claim in that she had asked a co-worker to lie about the particulars of a second accident alleged to have occurred on October 28, 2013.

This matter proceeded to a trial on the merits on May 27, 2015; and upon completion of the evidentiary phase, the WCJ took the issues under advisement. Thereafter, on August 18, 2015, the WCJ issued oral reasons for judgment denying Pinecrest's fraud defense and finding that Ms. Gaines proved that she suffered a work-related accident to her left shoulder on October 13, 2013. The WCJ then awarded Ms. Gaines weekly temporary total disability benefits (TTD) in the amount of $290.93 from October 29, 2013, until modified by the workers' compensation court, and further medical treatment. Based on a finding that Pinecrest was arbitrary and capricious in failing to pay indemnity benefits and in terminating medical benefits, the WCJ awarded Ms. Gaines a total of $6,000.00 in penalties and $8,000.00 in attorney fees. On September 23, 2015, the WCJ executed a written judgment corresponding to its oral reasons for judgment. Thereafter, Pinecrest perfected this appeal wherein it asserted two assignments of error:

1. The trial court erred when it found that [the] plaintiff did not commit fraud pursuant to La. R.S. 23:1208.

2. The trial court erred when it found that the plaintiff was entitled to indemnity wages, medical benefits, and penalties and attorney fees.

**OPINION**

The standard of review applicable and the burden of proof required by a

2

claimant alleging a work-related accident was recently discussed in *Calumet GP, LLC v. Garrett*, 50-341, pp. 3-5 (La.App. 2 Cir. 1/20/16), 186 So.3d 712, 715-16, *writ denied*, 16-301 (La. 4/8/16), __ So.3d __, wherein the second circuit stated:

> In a workers' compensation case, the appropriate standard of review to be applied by the appellate court to the WCJ's finding of fact is the manifest error or clearly wrong standard. *Dean v. Southmark Const.*, 03-1051 (La.7/6/04), 879 So.2d 112; *Dunlap v. Madison Parish Sch. Bd.*, 46,139 (La.App.2d Cir.4/13/11), 61 So.3d 833. Whether the claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the WCJ. *Dunlap*; *supra*; *Harris v. Casino Magic*, 38,137 (La.App.2d Cir.1/28/04), 865 So.2d 301, *writ denied*, 04-0502 (La.4/8/04), 870 So.2d 275. Unless shown to be clearly wrong, the WCJ's factual findings of a work-related disability will not be disturbed where there is evidence which, upon the trier of fact's reasonable evaluation of credibility, furnishes a reasonable, factual basis for those findings. *Id.* When a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989); *Wilson v. General Motors Corp.*, 45,232 (La.App.2d Cir.5/26/10), 37 So.3d 602. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Rosell*, *supra*; *Morgan v. Glazers Wholesale Drug Co.*, 46,692 (La.App.2d Cir.11/2/11), 79 So.3d 417. The trier of fact's determinations as to whether the worker's testimony is credible and whether the worker discharged the burden of proof are factual determinations, not to be disturbed upon review unless clearly wrong. *Harris v. City of Bastrop*, 49,534 (La.App.2d Cir .1/14/15), 161 So.3d 948; *Thomas v. GM Benefits & Serv. Ctr.*, 48,718 (La.App.2d Cir.1/15/14), 132 So.3d 464.
>
> An employee is entitled to worker's compensation benefits if he receives a personal injury by accident arising out of and in the course of his employment. La. R.S. 23:1031; *McLin v. Industrial Specialty Contractors, Inc.*, 02-1539 (La.7/2/03), 851 So.2d 1135; *Scott v. Super 1 Foods*, 45,636 (La.App.2d Cir.9/29/10), 48 So.3d 1133. An employment-related accident is an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration. La. R.S. 23:1021(1). The term "accident" includes a weakened condition which collapses due to a precipitous event. *Rice v. AT & T*, 614 So.2d 358 (La.App. 2d Cir.1993).

3

Although the workers' compensation law is liberally construed in favor of coverage, the claimant's burden of proving an accident is not relaxed; she must prove by a preponderance of the evidence that an accident occurred and the resulting disability is related to an on-the-job injury. *McLin*, *supra*; *Hofler v. J.P. Morgan Chase Bank, N.A.*, 46,047 (La.App.2d Cir.1/26/11), 57 So.3d 1128, 1134. When the accident at question is unwitnessed, a worker's testimony alone may be sufficient to discharge claimant's burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts doubts upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. *Bruno v. Harbert Int'l, Inc.*, 593 So.2d 357, 360-61 (La.1992).

With regard to an employee's claim of fraud as it relates to the claimed work-related accident, La.R.S. 23:1208(A) provides that "[i]t shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation." Any person violating this statute forfeits his or her right to receive workers' compensation benefits and can also face the imposition of criminal penalties, civil penalties, and the restitution of all paid benefits. La.R.S. 23:1208(C), (D), and (E).

To prevail on a fraud defense, the party alleging fraud must prove: (1) that a false statement or representation, (2) was willfully made, and (3) was made for the purpose of obtaining or defeating any benefit or payment. *Resweber v. Haroil Constr. Co.*, 94-2708, 94-3138 (La. 9/5/95), 660 So.2d 7. There is no requirement that the employer prove that it suffered prejudice as a result of the false statement or misrepresentation. *Freeman v. J.P. Morgan Chase*, 42,716 (La.App. 2 Cir. 12/5/07), 974 So.2d 25. As stated in *Resweber*, 660 So.2d at 16, "where the false statements are made specifically to obtain benefits, and thus to defraud the workers' compensation system, the benefits will be forfeited for the sole reason that the claimant has willfully and deliberately attempted to defraud the workers' compensation system, and no further requirements are to be imposed."

4

Moreover, as the forfeiture imposed by La.R.S. 23:1208 is severe in nature, the provisions of the statute are to be strictly construed. *Freeman*, 974 So.2d 25.

> The word "willful" has been defined as "proceeding from a conscious motion of the will; voluntary; knowingly; deliberate; intending the result which actually comes to pass; designed; intentional; purposeful; not accidental or involuntary." *Grant v. Natchitoches Manor Nursing Home*, 96-1546 (La.App. 3rd Cir.5/14/97), 696 So.2d 73, 76, *writ denied*, 97-1582 (La.10/17/97), 701 So.2d 1330. The relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits. A false statement which is inconsequential to the present claim may indicate that the statement was not willfully made for the purpose of obtaining benefits. Clearly, an inadvertent and inconsequential false statement would not result in forfeiture of benefits. *Resweber v. Haroil Constr. Co.*, 660 So.2d at 16.

*Newman v. Richard Price Constr.*, 02-995, p. 5 (La.App. 1 Cir. 8/8/03), 859 So.2d 136, 141.

The finding of fraud by a workers' compensation judge is a factual finding, which will not be reversed absent a finding of manifest error. *Rogel v. Dollar Gen. Corp.*, 13-792 (La.App. 3 Cir. 12/11/13), 132 So.3d 978, *writ denied*, 14-58 (La. 3/14/14), 135 So.3d 604.

### *Assignment of Error Number One*

In its first assignment of error, Pinecrest does not question the WCJ's findings with regard to the accident of October 13, 2013, or the disability arising therefrom. Instead, Pinecrest argues that the WCJ erred by failing to deny Ms. Gaines benefits because she violated the provisions of La.R.S. 23:1208 on October 28, 2013, when she claimed she had suffered a second work-related injury and asked her co-worker, Marquese Molette, to bear false witness to the particulars of the accident and her injury. Analysis of this assignment of error is fact intensive and must be resolved pursuant to the doctrine of manifest error.

The evidentiary record establishes that on October 13, 2013, Pinecrest had been involved in an institution-wide changing of its shift format from an eight-hour

shift to a twelve-hour shift. This change resulted in numerous employees being promoted; all of the employees receiving new assignments; and confusion concerning individual schedules. This confusion left Ms. Gaines working alone at Home 601A on the October 12-13, 2013 evening shift, and during that shift, she injured her left shoulder while attempting to service her clients. She completed her shift and then sought medical treatment at Rapides Regional Hospital (Rapides Regional) in Alexandria, Louisiana the next morning. The personnel at Rapides Regional prescribed pain medication and restricted her from working for the next two weeks. She returned to Pinecrest that evening at the time of what otherwise would have been the start of her new twelve-hour-shift time for the limited purpose of reporting her accident, and she made her report to the manager of Home 601A.[4] According to Ms. Gaines, the manager told her that the accident had already been reported and that she (Ms. Gaines) was not scheduled to work that night. Sometime thereafter, Ms. Gaines left the facility and did not return for two weeks. She acknowledges that she did not make it clear to her supervisor that she would not be returning for that two-week period.

However, before Ms. Gaines could leave, Carol Oliver, the supervisor of Home 601A and six other Pinecrest homes,[5] approached her and informed her that she was in fact scheduled for work on the night shift in a one-on-one situation with a client. Ms. Gaines informed Ms. Oliver that not only was she not scheduled for that evening, but that the medication she was taking would put her to sleep if she were to sit one-on-one with a client for twelve hours. It does not appear from the

---

[4] The manager is identified in the record only as Ms. Clayton, and she was replaced by the changes commencing on October 13, 2013. Ms. Clayton did not testify at trial.

[5] Ms. Oliver had just been promoted that day to the position of supervisor over seven homes within the Pinecrest facility, including Home 601A.

record that Ms. Oliver was aware of Ms. Gaines' accident of the day before.

When Ms. Gaines did return to work on October 28, 2013, she was still suffering from shoulder pain and asked Supervisor Keith Vanderly if she could move to a different work location because of that pain. Mr. Vanderly ordered her to her normal duty station, but when she arrived there, the new manager of Home 601A, Latasha Anderson,[6] instructed her to report to Ms. Oliver's office. Ms. Gaines complied, and when she arrived at the office, Ms. Oliver presented her with two written reprimands, dated October 13, 2013 and October 23, 2013 respectively. The first reprimand related to her refusal to remain on the job on the evening of October 13, 2013, and the second related to her failure to "follow the chain of command" in remaining off duty for the preceding two weeks. After a somewhat heated discussion wherein Ms. Gaines refused to sign the two reprimands, she returned to Home 601(A).

When Ms. Gaines arrived at Home 601(A), Ms. Anderson assigned four clients to her for the duration of the shift. A few moments later, as she and a co-worker, Marquese Molette, were changing the diaper of the first of the four clients, she claims that she sustained an injury to her lower back and left arm.[7] She testified that the client was "pretty heavy" and that she felt a sudden pain in her back as she leaned over the bedrails and reached out towards the client. The pain caused her to hit her left arm on the bedrail as she pulled her arms back toward her body.

Neither of the litigants introduced the October 14, 2013 medical records from Rapides Regional, and the only direct evidence of that treatment comes from

---

[6] Ms. Anderson received a promotion to manager as a result of the October 13, 2013 institution-wide changes.

[7] Ms. Gaines explained that changing a client entailed rolling him or her from side to side in order to remove and replace a diaper.

7

the testimony of Ms. Gaines. However, Ms. Gaines returned to Rapides Regional on October 22, 2013, complaining of left shoulder pain, and the introduced medical records of that date reference a left-shoulder rotator cuff tear for which treatment of steroids and pain medication had been rendered the week before.[8] On October 22, 2013, Ms. Gaines also requested a weaker pain medication because the previously prescribed medication had upset her stomach.

Ms. Gaines returned to the Rapides Regional emergency room on the evening of October 31, 2013, complaining of a sharp stabbing pain beginning in the lower back and moving to her neck. She returned to the emergency room on November 14, 2013, complaining that the pain had expanded to her lower extremities, secondary to her lower back pain.

Thereafter, Ms. Gaines came under the care of Dr. Gerald Leglue, an Alexandria, Louisiana physical medicine physician. He first saw Ms. Gaines on December 18, 2013, and in late February of 2014, he referred her to Dr. Mark Dodson, an Alexandria, Louisiana orthopedic surgeon who had previously treated her. When he saw Ms. Gaines on February 24, 2014, Dr. Dodson diagnosed Ms. Gaines with rotator cuff tendonitis and referred her for a surgical evaluation by his partner Dr. Michael E. Brunet, an orthopedic surgeon.

Dr. Brunet saw Ms. Gaines on March 20, 2014, and she provided him with a history of having experienced an acute onset of pain after pulling on a client at work. She claimed that the incident had resulted in her symptoms of persistent left shoulder pain since October of 2013, and Dr. Burnet diagnosed Ms. Gaines as suffering from adhesive capsulitis, secondary to a rotator cuff strain. Based on his diagnosis, Dr. Brunet recommended that Ms. Gaines undergo a left-shoulder

---

[8] While these records do support Ms. Gaines' assertion that an accident resulting in a left shoulder injury occurred on October 13, 2013, there is no subsequent evidence that suggests she sustained a rotator cuff tear in that accident.

arthroscopic release of the adhesions, followed by immediate physical therapy.[9] Dr. Brunet was of the opinion that without this treatment her condition would not improve, but that with the treatment, she would only be restricted from working for two to three months post-surgery. Pinecrest, through its third-party administrator, denied Dr. Brunet's request for approval of the surgery.

Pinecrest's entire fraud-defense argument against paying Ms. Gaines any benefits for the October 13, 2013 accident rests on a conversation between Ms. Gaines and Ms. Molette on the evening of October 28, 2013. Pinecrest supplements that argument with evidence of Ms. Gaines' reaction to the October 13, 2013 reorganization and the reprimands she received on October 28, 2013, and how those two events purportedly contributed to an attempt by Ms. Gaines to obtain benefits by fraudulent means.

Ms. Gaines does not deny that she and Ms. Molette had a discussion on the evening of October 28, 2013, concerning her alleged accident of that time. At trial, Ms. Gaines explained that interaction to be as follows:

> "Oh, I'm going to need" – the procedure is you have to have a witness, and I told Molette that I was hurt. She said, "Oh you not hurt. Stop that playing." I said, "Yes, I am. I'm hurt." And she said that I said [sic], "I'm going to need you to witness for me." She said, "You don't need no witness, Ms. Margaret. You don't need no witness" But she knew I was hurt. They all knew I was hurt. I was at home hurt. I was 14 days off of work hurt. "She said, "You not going not [sic] need no witness." So I went to Ms. Oliver. I called her. 333, that's the number you call, the procedure. They told me – I called IPC. They told me to get in touch with my six. Let my six know. And I went down the street and told my six. She seen I was hurt. She said, "Where you hurting at?" I said, "My lower back." And she said, "Where else your hurting at?" I showed her my arm. She say – I said, "Well, Ms. Clayton had already wrote that up." And she said, "Here take this paper and you to go the doctor." I went to Rapides and they gave me some Hydrocodones for my back and steroid pills and muscle relaxers.

---

[9] Dr. Brunet noted that Ms. Gaines exhibited difficulty in understanding her condition as well as his recommendations concerning treatment.

After her conversation with Ms. Molette, Ms. Gaines immediately notified Ms. Oliver of her accident and injury and informed her that Ms. Molette had been a witness to the accident.[10] At Ms. Oliver's instruction, Ms. Gaines returned to the office to make an accident report.[11]

What Ms. Oliver did not tell Ms. Gaines at the time was that while they were in the process of completing the accident report, she received a text from Ms. Molette informing her that Ms. Gaines had requested that she support the story that Ms. Gaines had injured herself. After Ms. Gaines left the premises, Ms. Oliver then went to Home 601A and caused Ms. Molette to prepare a written statement, which reads as follows:[12]

> On 10/28/13 between 9:00pm and 9:13pm Ms. Gaines asked me to come help her change an individual, then me and her both walked in the individuals room and Ms. Gaines told me she was going to report that she hit her arm on an individuals bed rail, then she asked me would I be a witness and tell that I seen it. I told Ms Gaines that I would not be able to do it for her very clearly then she continued to say "that's fine you don't have to do it", She gave me the individuals brief and told me to put it on her, and she went to anothers individuals bed I cant Say what happened after that, but when I cam into the living area She ws on the phone telling someone She hurt her arm and back I reported what Ms. Gaines told me to the 5 and 6.

At trial, Ms. Oliver, Ms. Molette, Ms. Anderson, and Kieva Lee[13] testified concerning Pinecrest's version of the circumstances surrounding the dispute and constituting the purported fraud on the part of Ms. Gaines. The general summary of their testimony is that Ms. Gaines fabricated both accidents because she was

---

[10] Ms. Oliver testified that Ms. Gaines telephoned her less than ten minutes after she had left the office to return to Home 601(A) following the reprimand discussion.

[11] Because of Ms. Gaines' complaints of arm pain, Ms. Oliver completed the accident report.

[12] The statement is reproduced as written.

[13] Ms. Lee participated as a witness in the reprimand conference between Ms. Oliver and Ms. Gaines on October 28, 2013.

angry over not being promoted as a result of the October 13, 2013 reorganization and because she became more upset after being given the two reprimand letters on October 28, 2013. Her response to her disappointment was to fabricate the October 28, 2013 accident and solicit Ms. Molette's assistance in her fabrication.

In denying Pinecrest's fraud defense and in finding in favor of Ms. Gaines, the WCJ, after reviewing the testimony and the evidence presented during the trial and the burden of proof, stated:

> Considering the evidence, I find Ms. Gaines to be a credible witness irregardless [sic] of the five employee's [sic] testimony. The indication from her medical records are objectively showing that she has shoulder problems, left shoulder problems. The records indicate that they are a result of the activity from changing a patient at Pinecrest. Dr. Dodson indicates why she has these types of shoulder problems. The complaints of her low back indicated that shortly after she said that this happened, that she was lifting and turning a 330-pound, bed-bound patient. There's no evidence provided by Pinecrest that on October 28, 2013 she was not changing a 300-pound patient. There are some discrepancies with the medical records that no one pointed out. The Court noted the discrepancies about how these things occurred, what various times they occurred.

> But I find that Ms. Gaines has shown by a preponderance of the evidence, given the totality of the evidence with respect to the medical records and the credibility of Ms. Gaines regarding the circumstances following the incident in October 13th or the 28th of 2013. The Court cites the parties to East versus Chronie Construction, 95-560 Third Circuit decision from November 22, 1995, 664 So. 2d 746, writ denied by the Supreme Court 95-377 677, so.2d (inaudible) February 16, 1996. Bordelon versus Industrial Contractors, 2000-1132 Third Circuit decision January 31, 2001, 783 do.2d [sic] 413, writ denied 2001-0591 791 so.2d 1119, April 22, 2001.

> These are some of the same allegations made here claiming that there were no injuries that they were disgruntle [sic] employees who was just upset because they did not get a promotion. The case of Farmer versus R.A. Company, Incorporated, 22000306 [sic] Third Circuit decision, June 20, 2007 967 [sic]. But in the Farmer case that individual recovered workers' compensation benefits despite a claim that there was no job accident and was just a disgruntle [sic] employee. As in that case as I find in this one, there's other objective evidence of the injuries and the time frame described. No explanation of how these conditions found were related to the other job accident. The question becomes whether the employer here in regards to the termination of medical benefits were arbitrary and capricious in

11

terminating those benefits and are subject to penalties according to Revised Statute 23:1201 (I). As I've stated, there's no testimony from the adjustor. So there's really to [sic] way to know what information they relied upon in March of 2014 to establish why the adjustor terminated medical care.

As we noted in the beginning of the analysis of this assignment of error, we resolve the fraud defense issue pursuant to a manifest error review. In the reasons for judgment, the WCJ clearly found Ms. Gaines to be a credible witness, while discounting the contrary testimony of Pinecrest's witnesses completely. In support of the credibility determinations, the WCJ noted that the medical evidence supported Ms. Gaines' claim of a compensable injury and that Pinecrest offered no evidence to suggest any other cause for the clearly-present physical injury. In fact, as noted by the WCJ, this matter is underscored more by what was not introduced into the record than by what was introduced into the record. The October 14, 2013 Rapides Regional medical records were not introduced and, therefore, proof of the first accident and resulting injury was based solely on Ms. Gaines' testimony and the reference in the October 22, 2013 records. Also absent from the record are Ms. Gaines employment records, which based on her testimony, would have substantiated her October 13, 2013 left-shoulder injury. Thus, the WCJ's credibility determinations became all the more important.

In reviewing the testimony presented at trial, we note that counsel for Ms. Gaines failed to ask specific questions during her testimony. Instead, Ms. Gaines was allowed to describe her work-related accident in a running monologue, which at times, was difficult to understand or follow chronologically. Moreover, Pinecrest's counsel declined to question Ms. Gaines on cross examination. Also missing from the record, as pointed out by the WCJ, was testimony from the claims adjustor, although the medical records indicate that the state paid all of Ms. Gaines' medical treatment up through Dr. Brunet's recommendation for surgery.

12

In reviewing the evidence that was contained in the record, we find that the WCJ was presented with conflicting testimony regarding whether Ms. Gaines committed fraud or actually suffered a work-related injury. Thus, based on the medical evidence and the WCJ's finding in regards to Ms. Gaines' credibility, which we have been instructed can virtually never be manifestly erroneous or clearly wrong, we find that it was not manifestly erroneous for the WCJ to find that Pinecrest failed to carry its burden on the issue of fraud. Accordingly, the judgment of the WCJ denying the state's La.R.S. 23:1208 fraud defense is affirmed.

## ASSIGNMENT OF ERROR NUMBER TWO

In its second assignment of error, Pinecrest does not argue that if Ms. Gaines had not committed fraud she still would not be entitled to a judgment for indemnity and medical benefits, penalties, and attorney fees. Instead, Pinecrest's sole argument is that Ms. Gaines's violation of La.R.S. 23:1208 precludes her from recovering any benefits, penalties, or attorney fees. Based on the absence of any argument other than fraud, we find that this assignment of error has been rendered moot by our affirmation of the WCJ's denial of Pinecrest's fraud defense. Accordingly, this assignment of error is dismissed as being moot.

## DISPOSITION

Based on the foregoing, we affirm the judgment of the workers' compensation judge in all respects. Pursuant to La.R.S. 13:5112(A), we assess the costs of this appeal in the amount of $1,279.50 to the State of Louisiana, through the Department of Health and Hospitals, Office for Citizens with Developmental Disabilities, and Pinecrest Supports and Services Center.

**AFFIRMED.**

13